Argued July 28, decided August 17, 1909.

STATE *v.* GERMAIN.

[103 Pac. 521.]

False Pretenses—Elements of Offense—Passing of Title.

1. In order to sustain a conviction of false pretenses, the prosecutor must have been induced to part with the title to the property of which he was defrauded; mere parting with possession being insufficient.

False Pretenses—Elements of Defense—Passing With Title.

2. In a prosecution for obtaining money by false pretenses, consisting of directing prosecutor for $7.50 to an alleged employer which did not exist, a recital in a receipt for the money that it was a "deposit made subject to securing position" "balance due thirty days from beginning work," and that it would be refunded in case the applicant should produce evidence that he had applied in person to the place where he was directed and failed to get the situation, did not indicate that defendant received the money as bailee and not as payment: his promise to refund indicating an intent not to return the identical money received, but to treat the money as payment for services, and not as a bailment.

False Pretenses—Representations.

3. Defendant received $7.50 from prosecutor, and executed to him a receipt for that sum, for which defendant agreed to furnish correct information by

which prosecutor should be enabled to secure a situation as lumberman with the "S. B. Lumbr. Co. at city." An indictment charged that, at the time the receipt was given, defendant stated to prosecutor that such lumber company was a large firm, partnership, business, or corporation, and that defendant knew such to be the case. *Held*, that defendant's representation that there was such a firm was a representation of an existing fact on which a prosecution for false pretenses could properly be based.

FALSE PRETENSES—VARIANCE—EVIDENCE.

4. Where an indictment for false pretenses charged that defendant received money, evidence showing that he received prosecutor's check on a bank, which defendant cashed before he was arrested, did not constitute a variance; the check being merely the vehicle by which defendant obtained the money.

FALSE PRETENSES—EVIDENCE—ORAL TESTIMONY—CORROBORATION.

5. Section 1812, B. & C. Comp., defining "false pretenses," does not require the pretense to be in writing; but Section 1407 declares that, on a trial for obtaining from any person any valuable thing by false pretenses, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing, but such pretense or some note or memorandum thereof must be in writing and either subscribed by or in the handwriting of the defendant. *Held*, that such section does not require that the memorandum contain the whole pretense, but that it should accompany and corroborate the oral evidence thereof, and hence, where the fraudulent representation was in writing, parol evidence of the conversation had between prosecutor and defendant at the time was admissible to corroborate the writing.

CRIMINAL LAW—PAROL EVIDENCE.

6. Where a receipt given for money pursuant to alleged fraudulent representations contained the letters "S. B. Lumbr. Co." to designate the name of a business concern to which prosecutor was referred for employment, parol evidence was admissible to explain the meaning of such letters and abbreviations.

CRIMINAL LAW—OTHER OFFENSES—MOTIVE—INTENT.

7. In a prosecution for false pretenses, testimony concerning similar offenses was admissible to show motive and fraudulent intent.

CRIMINAL LAW—EVIDENCE—REBUTTAL.

8. Where, in a prosecution for false pretenses, the State introduced evidence of other similar offenses to show motive and fraudulent intent, the court properly permitted defendant to explain the transactions proved by the State, but refused to allow defendant to prove additional instances not otherwise referred to, in which he had returned money received from employees for whom he had failed to procure employment.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE MCBRIDE.

Defendant, B. F. Germain, was convicted by the verdict of a jury of the crime of obtaining money by false pretenses on an indictment, the caption, omitting title, and charging part of which is as follows:

"The said B. F. Germain on the 8th day of December, A. D. 1908, in the County of Multnomah and State of

Oregon, then and there doing business as Germain's High-Class Information Bureau Company, did then and there knowingly, falsely represent and pretend to one Henry M. Clinesmith, that he, the said B. F. Germain, then and there had a position with the Smith Brothers Lumber Company of the city of Portland, said county and State, to give out and fill, and that he, the said B. F. Germain, could procure for him, the said Henry M. Clinesmith, the said employment, and that a certain writing of the tenor following, to wit: 'Germain's High-class Information Bureau Co., B. F. Germain, President and Manager. None but first class employees registered and sent out. Phone A 2145. Office room 2-3 Benson building, Fifth and Morrison streets. Portland, Oregon, Dec. 8, 1908. Received from H. M. Clinesmith the sum of $7.50, for which we agree to furnish correct information by which the above-named employee shall be enabled to secure a situation as lumberman with the S. B. Lumbr. Co. at city, wages $150 per month; failing to do which, we promise to refund the above amount paid and the fare for transportation actually paid to and from the place where said applicant is sent by said agent on return of this receipt, together with the written statement from the employer or other evidence that the applicant has applied in person at the place to which he is directed herein, and to the person to whom he is directed herein or his agent, and could not get the situation. B. Germain, Employment Agent'—there being written on the top thereof and across the face thereof the following words and figures, to wit: 'Deposit made subject to securing position, $7.50, balance due 30 days from beginning work. Dec. 15th'— then and there by him, the said B. F. Germain, signed in the manner and form aforesaid and delivered to and accepted by him, the said Henry M. Clinesmith, was a good and valid agreement whereby he, the said Henry M. Cline-smith, could then and there secure the said position, which he, the said B. F. Germain, then and there falsely represented and pretended to him, the said Henry M. Clinesmith, that he, the said B. F. Germain, then and there had to give out and fill as aforesaid, by means of which said false pretenses and representations aforesaid by him, the said B. F. Germain, then and there made to him, the said Henry M. Clinesmith, then and there believed and relied on, he, the said B. F. Germain, obtained

from the said Henry M. Clinesmith, and he, the said Henry M. Clinesmith, then and there delivered to, and he, the said B. F. Germain, received and accepted from the said Henry M. Clinesmith in consideration of and as a fee for procuring the situation aforesaid, the sum of $7.50 in lawful money of the United States of America, and of the value of $7.50, a more particular description of which being to the grand jury unknown, and of the personal property of the said Henry M. Clinesmith, with intent of him, the said B. F. Germain, then and there to cheat and defraud him, the said Henry M. Clinesmith, of the said sum of money; whereas in truth and in fact no such partnership, business, firm or corporation known as, existing or doing business as the Smith Brothers Lumber Company then and there existed at the said city, county and State, and the said Smith Brothers Lumber Company was then and there a fictitious concern, and the said B. F. Germain did not then and there have to give out or fill the said position of employment as aforesaid, and the said writing was not a good nor valid agreement, whereby the said Henry M. Clinesmith, could then and there secure the said situation, and this, the said B. F. Germain, then and there well knew, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Defendant was sentenced to imprisonment in the penitentiary for a term of two years, and appeals.

AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. George A. Johnson* and *Mr. John A. Jeffrey.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. George J. Cameron,* District Attorney, *Mr. Thad W. Vreeland* and *Mr. J. K. Page,* Deputy District Attorneys, with an oral argument by *Mr. Vreeland.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The first objection is to the sufficiency of the indictment. It is contended that the receipt shows on its face that the prosecutor, Clinesmith, did not part with the

title to his money, but only with the possession of it, and that, as the crime of obtaining money under false pretenses is committed only when the injured party is induced to part with the title to his property, the indictment does not state facts sufficient to constitute a crime. The courts have held with practical unanimity that the crime for which the defendant was convicted is not committed unless the party defrauded is induced by the false pretense to part with the title to his property, and that the mere parting with the possession is not sufficient. *State* v. *Anderson,* 47 Iowa, 142; *Grunson* v. *State,* 89 Ind. 533 (46 Am. Rep. 178) ; *Miller* v. *Commonwealth,* 78 Ky. 15 (39 Am. Rep. 194) ; *People* v. *Rae,* 66 Cal. 423 (6 Pac. 1: 56 Am. Rep. 102). In these and in many other cases the courts hold that when by means of fraud, trick, or artifice, the possession of property is obtained with felonious intent, and the title still remains in the owner, the crime is larceny; but if the title, as well as the possession, is parted with, the offense is that of obtaining money under false pretenses. The distinction is a very fine and technical one, and does not seem to be very substantial, but is very tenaciously adhered to by the courts.

2. It is contended in this case that, as the receipt shows on its face that the money was to be refunded if Clinesmith failed to get the situation applied for, and because the words "deposit made subject to securing position, $7.50, balance due 30 days from beginning work," were written across the face of the instrument, Clinesmith retained the property in the money; the defendant being a mere bailee. We cannot agree with this view. The receipt contains a promise to refund the amount paid and the fare actually paid to and from the place where said applicant should be sent to work, in case applicant should produce evidence that he had applied in person to the place where he was directed and failed to get the situation. To "refund" means to repay, to pay back,

and we are of the opinion that the title passed upon the payment of the money to defendant, and that there is nothing in the instrument itself that indicates that defendant was to return the identical money received. When defendant accepted the money, he accepted, not as a bailee, but as a payment, as the words in the receipt "we promise to refund the above amount paid," clearly indicate. *Rackliff* v. *Greenbush,* 93 Me. 99 (44 Atl. 375).

3. It is also contended that neither the indictment nor the proof shows the existence of a false representation as to present existing fact, which is always a necessary ingredient of the crime of which defendant is charged. The copy of the receipt or contract set forth in the indictment contains this statement:

"Received from H. M. Clinesmith the sum of $7.50, for which we agree to furnish correct information by which the above named employee shall be enabled to secure a situation as lumberman with the S. B. Lumber Co. at city."

The indictment alleges, and the proof shows, that when this receipt was given the defendant stated to Clinesmith that the Smith Brothers Lumber Company was a large firm doing business in the city, when in truth and in fact there was no such firm, partnership, business, or corporation, and that defendant knew this to be the case. Here was a representation as to an existing fact, namely, that there was such a firm as that indicated by defendant. The indictment is sufficient.

4. It was claimed on the argument that there was a variance between the indictment and the proof, as the evidence showed that Clinesmith gave defendant his check on a Portland bank, while the indictment alleges that the defendant received money. The evidence also shows that defendant cashed the check before he was arrested. The check was the mere vehicle by which defendant was enabled to obtain Clinesmith's money, and there was no variance.

5. It was also claimed that there was error in permitting oral evidence of the conversation between defendant and Clinesmith at the time the money was paid to defendant; the defendant maintaining that no evidence could be given of the transaction except the receipt itself. We do not so understand the law. In England, and in many of the states, neither the false pretense nor the evidence of it is required to be in writing; in fact, statutes requiring either of these requisites are the exception, rather than the rule. However, in this State, as a precaution against perjury, the legislature has required the evidence of such false pretense to be accompanied by a writing or some false token. Section 1812, B. & C. Comp., which defines the offense, does not require the false pretense to be in writing, so that, if this section stood alone, no written evidence of the pretense would be required; but section 1407, B. & C. Comp., has so modified the rules of evidence that evidence of a false pretense must be accompanied by a false token or writing. Said section reads as follows:

"Upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing, but such pretense or some note or memorandum thereof, must be in writing and either subscribed by or in the handwriting of the defendant."

This is a matter of procedure and evidence, and not of pleading. In *State* v. *Renick,* 33 Or. 584 (56 Pac. 275: 44 L. R. A. 266: 72 Am. St. Rep. 758), the view above taken was enunciated by this court in the following language: "The statute has also made it an offense for any person to obtain, or attempt to obtain, with intent to defraud, any money or property whatever by any false pretense or by any privy or false token. (Citing

Section 1812, B. & C. Comp.) The evidentiary matter necessary to support the charge must consist of a false token or writing accompanying the pretense. (Citing Section 1407, B. & C. Comp.)" While the precise question involved in the contention at bar was not involved in that case, it is cited as indicating the view of the court that the pretense itself need not necessarily be in writing, but that some note or memorandum thereof in writing was necessarily a part of the evidence that must be introduced in order to sustain a conviction. The statute of Indiana on the subject is as follows: "Whoever with intent to defraud another designedly by color of any false token or writing obtains from any person anything of value," etc., It will be seen that this statute differs from ours, in requiring the pretense to be in writing, and yet in construing this section the court says: "The appellant's counsel says in argument: 'I claim that to make a case· under the present statute it must be by color of a false token or writing alone, unaided by any verbal false pretense or representation; that the false token or writing must be of such a character that a person of ordinary caution would give it credit without relying upon any verbal representation whatever.' We do not think that the words 'by color of any false token or writing,' as used in the statute, should receive any such rigid or literal interpretation." *Wagoner* v. *State,* 90 Ind. 504, 507.

6. We think that the law excluding oral evidence of a false pretense, unless accompanied by some note or memorandum thereof in writing, was passed out of abundant caution to preserve the liberty of the citizen, and to require corroboration of oral testimony by some memorandum in the handwriting of the person accused. In this respect we think the rule analogous to that prescribed in this State in regard to the testimony of an accomplice, and that it is not necessary that the memorandum should contain the whole pretense, but that it

should accompany and corroborate the oral evidence of the pretense. On this theory the evidence of the conversation between defendant and Clinesmith was admissible. The evidence of Clinesmith, showing the intention of the parties in using the letters "S. B. Lumbr. Co.," was not only admissible on the ground above stated, but also for the reason that, where abbreviations are used in a writing, oral evidence is admissible to show their meaning. 1 Am. & Eng. Enc. (2 ed.) p. 99; *La Vie* v. *Tooze,* 43 Or. 590 (74 Pac. 210).

7. Testimony concerning similar offenses was properly received as tending to show motive and fraudulent intent. *State* v. *Briggs,* 74 Kan. 377 (86 Pac. 447) ; *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892). In the case of *State* v. *Briggs, supra,* will be found a copious citation of the authorities sustaining the doctrine herein announced.

8. The defendant offered evidence to show that he had returned money in many cases where parties paying it had failed to get employment; but the evidence was rejected. We think the ruling of the court was proper. The mere fact that he had dealt with other persons without defrauding them was not evidence that he had dealt honestly with the prosecuting witness. The court ruled that he could go into and explain the transactions introduced in evidence by the State, and this was as far as he had any right to introduce testimony as to his dealings with other persosn.

We find no substantial error, and the judgment will be affirmed.                                    AFFIRMED.