No. 26,973.

THE STATE OF KANSAS, *Appellant*, v. ANSEL E. TOWER, *Appellee*.

SYLLABUS BY THE COURT.

FALSE PRETENSES—*Property Obtained — Extension of Time on Debt — Statute Construed.* The statute relating to cheating and defrauding by means of false pretenses provides that every person who shall, by designated means, obtain from any person "any money, personal property, right in action, or any other valuable thing or effects whatsoever," shall be punished as for stealing. *Held,* the quoted enumeration does not embrace a mere pecuniary advantage devoid of any physical attribute possessed by money, chattels, or valuable securities.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed December 11, 1926. Affirmed.

*Charles B. Griffith,* attorney-general, *Roland Boynton,* assistant attorney-general, *R. H. Beebe,* county attorney, *Vernon Day, Donald Muir,* both of Anthony, *Robert C. Foulston* and *George Siefkin,* both of Wichita, for the appellant.

*E. C. Wilcox* and *J. Howard Wilcox,* both of Anthony, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The state appeals from an order of the district court quashing an information for cheating and defrauding by means of false representations. The question is whether obtaining an extension of time in which to pay a matured debt is a valuable thing within the meaning of the section of the crimes act relating to false pretenses.

The information charged that, with intent to cheat and defraud, and by means of false and fraudulent representations duly pleaded, defendant obtained a renewal and extension for 120 days of loans previously procured by him from a named bank, on which there were due stated sums of principal and interest, such renewal and extension being a valuable thing and of the value of more than twenty dollars. The statute reads as follows:

"Every person who, with intent to cheat or defraud another, shall, designedly, by means of any false token or writing, or by means or by use of any trick or deception or false or fraudulent representation or statement or pretense, or by any other means, instrument or device, or by means of any check or any other written or printed or engraved instrument or spurious coin or metal, obtain the signature of any person to any written instrument, or obtain from any person

False Pretenses, 25 C. J. p. 607 n. 59; 11 R. C. L. 829.

any money, personal property, right in action, or any other valuable thing or effects whatsoever, upon conviction thereof shall be punished in the same manner and to the same extent as for feloniously stealing the money, property or thing so obtained." (R. S. 21-551.)

The portion of the statute with which we are immediately concerned, that relating to property obtained, was derived from a Missouri statute of 1845, which was copied in the chapter relating to crimes and punishments in the revised statutes of Missouri of 1855:

"Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person, any money, personal property, right in action, or other valuable thing or effects whatsoever, upon conviction thereof, shall be punished in the same manner, and to the same extent, as for feloniously stealing the money, property, or thing so obtained." (Rev. Stats. Mo. 1855, ch. 50, art. III, § 51.)

This section appeared verbatim as section 88 in the Kansas territorial crimes act of 1859 (Acts of 1859, ch. XXVIII), and continued in force until the revision of 1868 became effective. In the General Statutes of 1868, the expression "by color of any false token" was changed to "by means of any false token," and the expression "or other valuable thing" was changed to "or any other valuable thing" (G. S. 1868, ch. 31 § 94). Otherwise, the section is a transcript of the territorial act and the Missouri statute referred to. In 1915 the legislature amended the section by elaborating the enumeration of means of deception, and in the revision of 1923 the phraseology of the amendment of 1915 was improved, but these changes did not affect the provision relating to property obtained, and that portion of the statute retains its identity with section 94 of the crimes act of 1868.

The problem for solution is whether the legislature intended to cover a field with marked boundaries so that all cheats and frauds within that field should be subject to punishment, or consciously and purposely extended the statute so that it embraced a new field not theretofore thought of as lying within the domain of punishable false pretenses. In the books for the guidance of courts called on to interpret statutes, it is written that penal statutes are to be strictly construed, and statutes tending to suppress fraud are to be liberally construed. It is conceived that the first business of the courts is to ascertain, if possible, what the legislature intended, and if the meaning of the statute to be applied be reasonably plain, to accept that meaning without attempting either to restrain or to enlarge it.

State v. Tower.

The origin and history of the crime of obtaining property by false pretenses, under the common law of England and under English statutes preceding and including 24 and 25 Victoria, c. 96, 101 Stat. at L. 360 (1861), are sketched in the excellent article on false pretenses in 25 C. J. 582 to 662. The act of Victoria was superseded by the act of October 31, 1916, "to consolidate and simplify the law relating to larceny triable on indictment and kindred offenses." This act was prepared according to the scientific method usually employed by the British parliament in dealing with highly important subjects of legislation. The false pretense section reads as follows:

"32. Every person who by any false pretense—

"(1) with intent to defraud, obtains from any other person any chattel, money, or valuable security, or causes or procures any money to be paid, or any chattel or valuable security to be delivered to himself or to any other person for the use or benefit or on account of himself or any other person; or

"(2) with intent to defraud or injure any other person, fraudulently causes or induces any other person—

"(a) to execute, make, accept, indorse, or destroy the whole or any part of any valuable security; or

"(b) to write, impress, or affix his name or the name of any other person, or the seal of any body corporate or society, upon any paper or parchment in order that the same may be afterwards made or converted into, or used or dealt with as, a valuable security:

"shall be guilty of a misdemeanor and on conviction thereof liable to penal servitude for any term not exceeding five years." (Eng. L. R. Stat., 6 and 7, George V, c. 50.)

It will be observed that in this statute every class of property obtainable by false pretense is embraced in "chattel, money, or valuable security." While this brevity was in course of attainment, that incorrigible mischief-maker "or other thing," which, cloaked in varying phraseology, still works confusion in American false-pretense legislation, was put in the straight-jacket of certainty.

The statute of 33 Henry VIII, c. 1 (1541), ordained that if any person should falsely and deceitfully obtain or get into his hands or possession any money, goods, chattels, jewels, "or other things" of any other person or persons, by color or means of any false token or counterfeit letter, he should be punished in a prescribed manner (5 Stat. at L. 65). This statute was supplemented, but not superseded, in 1757, by a false pretense act which provided that—

"All persons who knowingly and designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares or merchandise, with intent to cheat or defraud any person or persons of the same;  . . .

shall be deemed offenders against law and the public peace; . . ." (30 George II, c. 24, 22 Stat. at L. 114.)

In 1812, the false pretense act of 1757 was extended to include obtaining money, etc., from bodies politic and corporate, and the list of subjects of acquisition by false pretense was expanded as follows:

"Any money, goods, wares or merchandise, or any bond, bill of exchange, bank note, promissory note, or other security for the payment of money, or any warrant or order for the payment of money or delivery or transfer of goods or other valuable thing. . . ." (52 George III, c. 64, 52 Stat. at L. 333.)

In 1827, parliament passed an act consolidating and amending the laws relating to larceny and offenses connected therewith (7 and 8 George IV, c. 29, 67 Stat. at L. 168). The act contained 77 sections, and dealt with extortion, robbery and stealing from the person, housebreaking and stealing from buildings, shops, warehouses and vessels, stealing by lodgers, embezzlement by clerks, servants and bailees, and many other larcenies and kindred offenses. In this statute, the term "valuable security" was introduced, and the term was defined to include enumerated instruments. The enumeration embraced "any warrant or order for delivery or transfer of goods or other valuable thing." The false pretense section of the statute read as follows:

"And whereas, a failure of justice frequently arises from the subtle distinction between larceny and fraud; for remedy thereof be it enacted, that if any person shall by any false pretense obtain from any other person any chattel, money, or valuable security, with intent to cheat or defraud any person of the same, every such offender shall be guilty of a misdemeanor, . . . *Provided always,* That if upon the trial of any person indicted for such misdemeanor it shall be proved that he obtained the property in question in any such manner as to amount in law to larceny, he shall not by reason thereof be entitled to be acquitted of such misdemeanor; . . . and no person tried for such misdemeanor shall be liable to be afterwards prosecuted for larceny upon the same facts." (§ 53.)

It will be observed that in this statute all the personal property belonging to the classes usually indicated by "goods, wares and merchandise," became simply "any chattel." The subtle distinction referred to was this: If a person by false pretense induced another to part with possession only, as the lending of a horse, and then converted the goods, the crime was larceny; if the owner parted with property as well as possession, the crime was not larceny; but in

State v. Tower.

false pretense as well as larceny, it was essential that the goods should be obtained with intent to deprive the owner wholly of his property. (*Reb. v. Kilham*, L. R. 1 C. C. 261.) The statute did not remove the distinction, which still prevails (25 C. J. 657), but permitted conviction of false pretense when the proof disclosed technical larceny.

The statute of 1827 was superseded by the act of 24 and 25 Victoria, already referred to. In that act, instruments subject to larceny and obtainable by false pretense were classified into "documents of title to goods" and "documents of title to land." Among documents of title to goods were "warrants or orders for delivery or transfer of any goods or valuable thing." In the enumeration, such documents were placed between warehouse certificates and bought and sold notes and other documents used in the ordinary course of business as proof of the possession or control of goods. The result was, "other valuable thing" meant a chattel belonging to the same general class as things stored, possessed, bought, sold, transferred, and delivered.

In the statute of Victoria, the term "valuable security" was defined to include documents of title to goods and land, and certain enumerated securities. The scheme of the Larceny Act of 1816, so far as material here, is the same as that of the act of Victoria.

The foregoing survey discloses that, throughout a period of nearly four hundred years, extending to the present time, the false pretense statutes of England have related to tangible things which, whether money, chattels, or valuable securities, were themselves the subject of larceny. Obtaining credit on account, and thereby accomplishing nonpayment of a sum of money, by false pretense, was not punishable (*Reg. v. Crosby*, 1 Cox C. C. 10 [1843]), and in the case of *Reg. v. Bagley*, 17 Cr. App. R. 162 (August 13, 1923), the lord chief justice, in denying an application for leave to appeal against a sentence imposed on conviction of false pretense, made the following observation:

"It is to be observed that the count in the indictment for obtaining food and lodging by false pretenses is wrongly drawn. Lodging is not a chattel, money or valuable security within s. 32 of the Larceny Act, 1916, 6 and 7 George V, c. 50."

No case has been discovered in which it was contended, much less decided, that a mere benefit, not subject to larcenous acquisition

by one person from another, fell under the ban of the false pretense statutes.

Some early American statutes adopted the wording of the act of 30 George II (1757). Because of the rapid multiplication and growing importance of new forms of personalty, the enumeration of "goods, wares and merchandise" was manifestly too restricted, and subsequent statutes made various additions, which are noted in the Corpus Juris article referred to above (25 C. J. § 35, p. 606). In the case of *Robinson v. State*, 53 N. J. L. (24 Vroom) 41, Justice Dixon expressed the belief that the crimes act of New Jersey of March 13, 1796, first employed the phrase "or other valuable thing." Afterward the phrase appeared in the statutes of New York, Pennsylvania, and Missouri.

In the opinion in the case of *State v. Thacher*, 35 N. J. L. (6 Vroom) 445, the court said:

"The English statute of 30 George II, c. 24, which used the words 'goods, wares, and merchandise,' was found defective in not providing against obtaining choses in action by false pretenses. This defect was remedied by 7 and 8 George IV, c. 29, which used the words 'any chattels, money, or valuable security.'

"Our legislators, who framed our act in view of the early English statute, were not content with the language there used, but, with the design of amplifying its operation, employed the words, 'money, wares, merchandise, or other valuable thing.' Our statute having been passed prior to 7 and 8 George IV, and our lawmakers having adopted more comprehensive terms than that act contains, no argument can be drawn from the fact that the English parliament, by subsequent enactment, declared it indictable to obtain by false pretense the signature of any person to a written instrument. 'Valuable thing' is more comprehensive than 'valuable security.' Every valuable security is a valuable thing, but many valuable things are not valuable securities. Mere tangible things were not alone meant, for the words prior to 'valuable thing' described them." (p. 452.)

There can be no doubt that the legislature of New Jersey intended to enlarge and did enlarge the scope of its act beyond that of the English model, but it is not clear that the concluding sentence of the quotation from the opinion in *State v. Thacher* did not outdo the legislature.

Before 1796 Blackstone's Commentaries became well known in the American states which were formerly British colonies. According to Blackstone (book 4, p. 158), the statutory law relating to defrauding by color of false token, counterfeit letter, or false pretense, consisted of the statutes of 33 Henry VIII and 30 George II.

The statute of Henry employed the expression "other things" to piece out enumeration of money, goods, chattels, and jewels. Perhaps the state legislatures used "other valuable thing" for the same purpose, without intent to embark upon the uncharted sea of abstract privileges and benefits. However that may be, there is no room to doubt that the legislatures of Missouri and Kansas did not intend to include in their false pretense statutes a privilege having no attribute of transferable property and entirely dissociated from any tangible subject of larceny.

In the General Statutes of 1868, and in the revision of 1923, obtaining by false pretense is classified with offenses against property. As indicated, the false pretense provision was originally section 51, article 3, chapter 50, of the Revised Statutes of Missouri of 1855. Article 3 was devoted to the subject of offenses against property. Section 16 provided that any person convicted of breaking and entering certain buildings and structures in which there should be "any goods, wares or merchandise or other valuable thing kept or deposited," should be guilty of burglary in the second degree.

Section 25 defined grand larceny as follows:

"Every person who shall be convicted of feloniously stealing, taking and carrying away, any money, goods, right in action, or other personal property or valuable thing whatsoever, of the value of ten dollars or more, or any slave, horse, mare, gelding, colt, filly, ass, mule, neat cattle, sheep or hog, belonging to another, shall be deemed guilty of grand larceny."

Section 31, relating to petit larceny, read as follows:

"Every person who shall steal, take, and carry away any money or personal property, or effects of another, under the value of ten dollars (not being the subject of grand larceny, without regard to value), shall be deemed guilty of petit larceny, . . ."

Section 39, relating to embezzlement, provided that any clerk, etc., who should embezzle, convert to his own use, or take, make away with, or secrete "any money, goods, rights in action, or valuable security or effects whatsoever," which came into his possession or under his control by virtue of his employment, should be punished as for stealing.

Section 41 related to embezzlement by carriers and bailees of "any money, goods, rights in action, property, or valuable securities or other effects" delivered to or coming into possession or under care of such bailees.

Section 43 related to buying or in any way receiving "any goods,

money, rights in action, personal property, or other valuable securities or effects whatsoever," knowing the same to have been embezzled, taken, secreted, or stolen.

Section 49 related to conversion of articles or lost property thus enumerated: "Any money, goods, rights in action, or other personal property or valuable thing whatsoever."

Section 51 was the false pretense section. Section 52 related to obtaining signatures by means of certain kinds of false tokens, and section 53 provided that if, upon the trial of any person indicted under sections 51 and 52, it should be proved that he obtained "the property or other thing in question" in a manner to amount to larceny, he should not be acquitted, but should be convicted and punished as if the offense were proved as charged.

Section 54 related to receiving "any money, goods, rights in action or property, or effects whatsoever," by impersonating the owner or person to whom they were intended to be delivered.

From this review it appears the Missouri legislature regarded a "right in action" as something which might be taken, stolen, and carried away by a thief; which might come into possession of a clerk, etc., and then be converted, taken, made away with, or secreted; which might come into possession of a carrier or other bailee; which might be bought or received as stolen property; which might be converted as lost property; and which might be delivered to the wrong person, as the result of impersonation. "Effects" were things which might be the subject of petit larceny, of embezzlement, and of other crimes involving tangible things. A "valuable thing" was something which might be the subject of burglary, grand larceny, embezzlement, and conversion by a finder; and the statute affords no hint that an entirely different class of things was intended by the designation, "valuable thing," in the false pretense section.

The terms "right in action," "valuable thing," and "effects," are used in the statute of 1868 of this state, and in the revision of 1923, in collocations similar to those contained in the Missouri statute. In R. S. 21-520 (burglary, second degree), "valuable thing" appears as something kept or deposited in a building within the curtilage of a dwelling house, or in a shop, store, booth, tent, warehouse, boat, or vessel. In R. S. 21-533 (grand larceny), "valuable thing" appears as something to be stolen, taken and carried away. There can be little difference between "valuable thing" and "thing of value." In R. S.

21-531 (bank robbery), "thing of value" appears as something of which a bank may be robbed. The false pretense section, R. S. 21-551, is followed by two related sections, one providing for punishment of a certain kind when the false token is of a certain character (R. S. 21-552), and the other providing for conviction and punishment when larceny is established under a charge of false pretense (R. S. 21-553). In the first, the expression "or other thing" takes the place of "any other valuable thing or effects whatsoever" in the false pretense section; and in the other, the expression "money or other thing in question" takes the place of the entire enumeration in the false pretense section. The grand larceny section (R. S. 21-533) embraces "money, goods, rights in action, or other personal property or valuable thing whatsoever," of the value of twenty dollars or more. The petit larceny section (R. S. 21-535) embraces only "money or personal property or effects," under the value of twenty dollars. It will not be assumed that the legislature, intending to discriminate between classes of property subject to larceny, classified for purpose of punishment according to value. One description was meant to be just as comprehensive as the other, and there is no basis whatever for inference that the legislature purposely designed that, in the same statute, valuable things should mean tangible things for the purpose of burglary, larceny, and bank robbery, and should mean objects of thought having no affinity with tangible things for the purpose of obtaining by false pretense.

When it desired to do so, the legislature was capable of distinguishing between tangibles and intangibles as obtainable things. In the statute relating to blackmail, it drew the distinction with perfect accuracy. The things to be extorted or gained by blackmail are "any chattel, money or valuable security, or any pecuniary advantage" (R. S. 21-2412). The result is, the context of the section relating to false pretenses demonstrates that the term "personal property" was used in that section to denote personal movable things generally; the term "rights in action" was used to denote the representatives of money and of personal things included in the term "choses in action," and which, by elaborate definition, became represented in the English statutes by "valuable security"; then, in order that the entire species of personal chattels which are subjects of acquisition by one person from another, might be embraced, the shotgun expression "or any other valuable thing or effects whatso-

ever" was added. Mere pecuniary advantage, devoid of any physical attribute of money, chattel, or valuable security in the sense of the English statute, was not included.

The information charged the defendant with obtaining a pecuniary advantage of the value of more than twenty dollars, by means of false representations. The information did not state a public offense, and the judgment of the district court quashing the information is affirmed.