Argued June 5, reversed July 6, 1951

# STATE OF OREGON *v.* MILLER
### 233 P. 2d 786

*Harrison R. Winston* argued the cause for appellant. On the brief were Winston & Dimick, of Roseburg.

*Robert G. Davis,* District Attorney, of Roseburg, argued the cause for respondent. With him on the brief was Charles S. Woodrich, of Roseburg.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

LUSK, J.

The defendant was convicted of the crime of obtaining property by false pretenses, charged in the indictment to have been committed as follows:

"The said C. E. Miller on the 24th day of June A. D. 1950, in the said County of Douglas and State of Oregon, then and there being, did then and there unlawfully, feloniously and knowingly, with intent to injure and defraud, falsely pretend and represent to one Selmar Hutchins that he, the said C. E. Miller, was then and there the sole and exclusive owner, free and clear of all encumbrances and liens of any kind whatsoever, of the following described personal property, to-wit, One (1) TD-14 International Tractor, Motor No. TDF11380, and that a certain indenture and mortgage purporting to cover and convey the said above described personal property, dated the 24th day of June, 1950, made, executed and delivered by the said C. E.

Miller to the said Selmar Hutchins, agent of the Hub Lumber Company, to secure payment of a certain promissory note made, executed and delivered on the said date by the said C. E. Miller and in the favor of the said Hub Lumber Company in the sum of One Thousand Two Hundred Seven and 07/100ths Dollars ($1,207.07), together with interest thereon at the rate of Six Per Cent (6%) per annum from the date thereof until paid, was, upon the said 24th day of June, 1950, a good and valid security for the payment of said promissory note, by means of which false and fraudulent pretenses and false and fraudulent token in writing the said C. E. Miller on the 24th day of June, 1950, in the County of Douglas, State of Oregon, then and there unlawfully, feloniously and fraudulently obtained from the said Selmar Hutchins, agent of the Hub Lumber Company, a guarantee on an obligation in the sum of $1207.07 owed by the defendant to the Howard Cooper Corporation, and the said Hub Lumber Company was then and there induced by the said false pretenses and false representations and said false and fraudulent mortgage to accept the said note and mortgage and to give therefore the said guaranty to the Howard Cooper Corporation of the obligation owed by C. E. Miller to the Howard Cooper Corporation, whereas in truth and in fact the said C. E. Miller was not then and there the sole and exclusive owner free and clear of all encumbrances and liens of the said personal property hereinabove mentioned and described, nor was the said mortgage a good and valid subsisting mortgage of said personal property, but on the contrary the said mortgage was worthless and did not constitute a first lien upon said property nor did the said mortgage on the 24th day of June, 1950, constitute a good and valid security for the payment of said promissory note, but on the contrary the said mortgage was worthless as security for said promissory note and the said personal

property hereinabove mentioned and described was not the personal property of the said C. E. Miller but was being purchased by him under a conditional sales contract from Paul Ryan and Dale Albright, all of which the said C. E. Miller then and there well knew, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

■ The defendant has appealed from the judgment of conviction, assigning a number of alleged errors, among them the court's overruling of the defendant's motion, interposed at the beginning of the trial, to the introduction of any evidence on the ground that the indictment failed to charge a crime against the defendant. The sufficiency of the indictment was not challenged by demurrer, but the question was, nevertheless, properly raised by the defendant's objection. *State v. Reyner,* 50 Or. 224, 227-228, 91 P. 301. And, as we think that the Court's ruling on the objection was erroneous, that is the only question which need be discussed.

The statute under which this prosecution is attempted to be maintained is § 23-537, O.C.L.A., and, so far as in any way material, reads:

"If any person shall, by any false pretenses or by any privity or false token, and with intent to defraud, obtain or attempt to obtain, from any other person any money or property whatsoever, or shall obtain or attempt to obtain with the like intent the signature of any person to any writing, the false making whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not more than five years, or by imprisonment in the county jail not more than one year, or by a fine of not more than $500, or by both such fine and imprisonment. The making of a bill of sale, or assignment, or mortgage of personal property, by any person

not the owner thereof, for the purpose of obtaining money or credit, or to secure an existing indebtedness, shall be deemed a false pretense within the meaning of this section."

The gist of the offense against which the statute is directed is obtaining money or property of another by deceit, fraudulently and feloniously induced by the beneficiary: *State v. Hammelsy*, 52 Or. 156, 96 P. 865, 17 L.R.A. (N.S.) 244, 132 Am. St. Rep. 686; *State v. Cody*, 116 Or. 509, 518, 241 P. 983.

The indictment charges that the defendant, by means of the false pretenses described, fraudulently "obtained" from an agent of the Hub Lumber Company a "guaranty" of the defendant's indebtedness to the Howard Cooper Corporation and "induced" the Hub Lumber Company to "give" such "guaranty" to the Howard Cooper Corporation. A "guaranty of the payment of a note or other obligation is an absolute undertaking to pay it when due." *Marshall-Wells Co. v. Tenney*, 118 Or. 373, 382, 244 P. 84, 45 A.L.R. 1382, and cases there cited. Reduced to its simplest terms, this indictment means that by false pretenses the defendant induced the Hub Lumber Company to agree to pay his indebtedness to the Howard Cooper Corporation if he should fail to pay it. The question is whether this amounts to an allegation that, in the sense of the statute, the defendant obtained "any property" from the Hub Lumber Company. If not, then the indictment does not charge a crime. It does not allege that the defendant obtained or attempted to obtain any money from any other person, or that he obtained or attempted to obtain the signature of any person to any writing. There is no claim that the case falls within the provision of the statute which denounces the making of a bill of sale or assignment or mortgage of personal

property by any person not the owner thereof for the purpose of obtaining money or credit or securing an existing indebtedness. Under this latter provision the person in whose favor the false instrument is made must also be the person from whom the money or credit is sought to be obtained or to whom the existing indebtedness is owing. So much is not disputed.

■ The indictment does not allege the crime of "gross fraud or cheat at common law" (§ 23-548, O.C. L.A.), for the token used to consummate the fraud denounced by that statute is one calculated, and the purpose of which is to deceive or impose upon the public in general rather than a privy token or symbol such as the chattel mortgage in this case. See *State v. Renick,* 33 Or. 584, 56 P. 275, 44 L.R.A. 266, 72 Am. St. Rep. 758.

The source of the false pretenses statute in this country is the common law and the statute law of England, *State v. Tower,* 122 Kan. 165, 251, P. 401, 52 A.L.R. 1160. The English courts hold that the thing obtained must be the subject of larceny at common law, and accordingly a conviction for obtaining two dogs by false pretenses was quashed because at common law dog stealing is not larceny, *Reg. v. Robinson,* 8 Cox's Criminal Law Cases 115 (1859); so likewise an indictment for obtaining food and lodging by false pretenses. *Rex v. Bagley,* 17 Cr. App. R. 162 (1923). Under statutes like ours many of the courts of this country take the same view of the law. The California statute covers "money or property." The court in *People v. Cummings,* 114 Cal. 437, 46 P. 284, in holding that the word "property" did not include real property, said:

"In their origin both the common law and statutory offenses were undoubtedly designed and aimed

solely at protecting personal property, and in aid of the laws against larceny and theft. * * * And the offense of false pretenses under the English statutes has always been construed as largely analogous to and closely bordering upon that of larceny, and as applying only to personal property which was capable of manual delivery, and the subject of the latter offense; and has always been punishable in much the same manner as larceny. Real property under the English law was never the subject of the offense, either of cheating or of false pretenses.''

See, to the same effect, *State v. Eno,* 131 Ia. 619, 109 N.W. 119; *Hayes v. Commonwealth,* 173 Ky. 188, 190 S.W. 700; *State v. Tower,* supra; *People v. Weisbard,* 248 N.Y.S. 399, 139 Misc. Rep. 385; 2 Burdick, Law of Crime, 482, § 641; 2 Bishop on Criminal Law (9th ed.) 382, 383; 35 C.J.S., False Pretenses, 669, § 26; 25 C.J., False Pretenses, 608, § 37; 22 Am. Jur., False Pretenses, 466, § 40.

It should be observed at this point that our statute in respect of the present question is not as broad as those in some of the other states. It reads ''any money or property whatsoever.'' In some of the states, as stated in Burdick, op. cit., 481, § 640, the statutes, ''after enumerating various classes of personal property, conclude the list with what is apparently intended as an all inclusive term, such as 'other things of value,' 'any other valuable thing,' or 'and other valuable thing or effects whatsoever'.'' The Kansas statute includes ''any money, personal property, right in action, or any other valuable thing, or effects whatsoever.'' Notwithstanding the comprehensiveness of this provision, the court in *State v. Tower,* supra, held, in the light of the origin and history of the crime of false pretenses, that

obtaining an extension of time in which to pay a matured debt was not a "valuable thing" within the meaning of the section. The term "personal property" was said "to denote personal movable things generally." "Mere pecuniary advantage, devoid of any physical attribute of money, chattel, or valuable security, in the sense of the English statute, was not included."

The Louisiana statute refers to "money or any property." In *State v. Eicher*, 174 La. 344, 140 So. 498, the defendant was charged with obtaining credit from a bank by falsely representing that a certain note had value and was secured by a chattel mortgage. The indictment was held bad, the court saying that "The privilege of having a note renewed or the time of its payment extended may be and frequently is a valuable one to the debtor. But such privilege or advantage is neither money nor property in the sense those terms are ordinarily used and understood." The court further said: " 'Property,' as that term is used in this statute, means wordly goods or possessions, tangible things, and things which have an exchangable or commercial value."

These are not isolated holdings, but in their conception of the meaning of the word "property," as used in statutes of this sort, represent the current of authority. Thus, in *Lochner v. State*, 218 Wis. 472, 491, 261 N.W. 227, it is said that "the thing procured 'must actually pass from the hand of the defrauded person.' There must be 'actual physical tradition'." See, also, *State v. Moore*, 15 Ia. 412; *State v. Smith*, 195 La. 783, 197 So. 429; *People v. Weisbard*, supra; 2 Bishop on Criminal Law, op. cit., 383, § 480; 35 C.J.S., False Pretenses, 668, § 26; 22 Am. Jur., False Pretenses, 465, § 36.

The provisions of the statute which make unlawful the obtaining of the signature of any person with intent to defraud, and the making of a bill of sale or assignment or mortgage of personal property for the purpose of obtaining money or credit or to secure an existing indebtedness, rather definitely indicate that such an intangible thing as credit was not considered by the legislature to be property.

■ Moreover, this court recognized that "property" under the statute must be something capable of being possessed and the title to which can be transferred when it said in *State v. Germain,* 54 Or. 395, 399, 103 P. 521:

"The courts have held with practical unanimity that the crime for which the defendant was convicted is not committed unless the party defrauded is induced by the false pretense to part with the title to his property, and that the mere parting with the possession is not sufficient (citing cases). In these and in many other cases the courts hold that when by means of fraud, trick, or artifice, the possession of property is obtained with felonious intent, and the title still remains in the owner, the crime is larceny; but if the title, as well as the possession, is parted with, the offense is that of obtaining money under false pretenses."

This distinction between larceny and obtaining property by false pretenses is discussed in 25 C.J., False Pretenses, 604, § 33, and in 2 Bishop, op. cit., 382, § 477. See, also, *State v. Styner,* 154 Ind. 131, 56 N.E. 98. It need hardly be said that the thing which the defendant is charged with obtaining in the present indictment, the guaranty, or, to be more accurate, the benefit of the guaranty which the Hub Lumber Company gave to the Howard Cooper Corporation, could

not be possessed, and that there could be no such thing as holding title to it.

Had the indictment alleged that the defendant obtained the signature of the Hub Lumber Company or its agent to a guaranty of the defendant's indebtedness, we would have had an entirely different question. The failure so to allege was not due to an oversight of the pleader but to the facts themselves, for the proof is that no written guaranty was ever executed but merely an oral one.

The district attorney calls attention to the broad and comprehensive definition of "intangible personal property" in § 110-103, O.C.L.A. This section is a part of the Revenue and Taxation Code. It is at least doubtful whether the "guaranty" which the defendant "obtained" is included within any of the categories therein enumerated. But we need not stop to determine that question, for those categories cannot be imported into a criminal statute for the purpose of expanding the word "property" beyond its established meaning when used in connection with the crime of false pretenses. Nor can we give to the word "whatsoever" in the phrase "any money or property whatsoever" any such expansive effect. It has no greater significance than that no property, as that term is understood when used in the present connotation, is to be expected. No other conclusion is permissible in view of the fact, already noted, that the legislature deemed it necessary to denounce specifically the crime of obtaining by false pretenses what the state argues is included in the term "property," namely, credit or security for an existing indebtedness. If the state's contention is to be accepted these provisions were wholly unnecessary.

Even though our statute included "a thing in

action" (see *People v. Ward,* 3 N.Y. Crim. Rep. 483), it would avail the prosecution nothing, for the guaranty was not, so far as the defendant was concerned, a "thing in action." It is doubtless true, as the state's brief asserts, that "a guaranty is a chose in action, a right to indemnity from the guarantor", but it is the right of the creditor who extends credit on the faith of the guaranty, not of the debtor to whom credit is given. The defendant did not receive even a chose in action from the Hub Lumber Company.

■ No case has been cited, and our research has discovered none, in which an attempt has been made to bring within the word "property" in a false pretenses statute facts such as are alleged in the indictment under consideration, and no case, we may add, in which something having a tangible character—though it be bill, note or check—was not delivered by the victim to the defendant. *State v. Evans,* 229 Ia. 932, 295 N.W. 433, cited by the state, is far from being authority for its position, as the thing obtained in that case was a "Co-collateral Trust Note," which the jury could find had value and which was capable of delivery by one person to another. The closest case on its facts to this one is the nisi prius decision of the New York Supreme Court in *People v. Weisbard,* supra, where it was held that a defendant, who induced another by fraud to enter into a lease, was not guilty of larceny by false pretenses, for the reason that "the assumption of an obligation under a contract cannot be the subject of larceny." The undertaking of the Hub Lumber Company in this case to guarantee the defendant's indebtedness to the Howard Cooper Corporation was nothing more nor less than the assumption of an obligation under a contract. The state argues that by the weight of au-

thority the obtaining of a loan by fraud is a violation of the statute (citing 24 A.L.R. 397, 52 A.L.R. 1167), and asserts that this is a similar case. But in the loan cases, as the state's brief itself points out, the victim parts with his money. And, while it is true (although not alleged in the indictment) that, just as in the loan cases, the accused obtained credit, he obtained it, not from the victim of his false representations, but from another.

The state's argument of "policy" that the public are entitled to the protection of the law against immoral and reprehensible conduct such as that with which the accused was charged, and of which, no doubt, he was guilty, is appealing, but should be addressed to the legislature, not to the courts. The legislature has not undertaken to make every fraud a crime, but has set boundaries around the crime of false pretenses which the courts must respect and have no authority to pass. *State v. Tower,* supra.

The indictment, in our opinion, does not allege a crime, and the judgment must therefore be reversed and the action dismissed.