Argued October 28, decided November 26, 1912.

### STATE v. WILSON.

(127 Pac. 980.)

**Larceny—"Railroad Ticket"—Common Law—"Any Goods or Chattels."**

1. A railroad ticket, though not yet stamped or delivered to a passenger, is a "railroad ticket," and also within the term "any goods or chattels," within Section 1947, L. O. L., providing that any one stealing any goods or chattels or any railroad passenger ticket or other evidence of the right of a passenger to transportation should be guilty of larceny, although the stealing of railroad tickets was not larceny at common law.

**Larceny—Indictment and Information—Description of Property.**

2. In general it is sufficient to describe property in the words of the statute which makes it a subject of larceny.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BURNETT.

The defendant, W. J. Wilson, was brought to trial in the circuit court upon an indictment, the charging part of which is as follows:

"The said W. J. Wilson, on the 6th day of February, 1912, in the County of Union, and the State of Oregon,

did then and there unlawfully and feloniously take, steal, and carry away in an office, to wit, the office of the Oregon-Wshaington Railroad & Navigation Company, a private corporation, at Union Station, said Union County, the following described personal property, then and there the subject of larceny, and kept in said office, to wit, one railroad passenger ticket printed, issued, and signed by the Oregon-Washington Railroad & Navigation Company, a private corporation, as evidence of the right of a passenger to transportation on the railroad of said company, from Union, Oregon, to Portland, Oregon; said passenger ticket being then and there signed by the printed *fac simile* signature of Wm. McMurray, general passenger agent of said company, and then and there bearing and having printed thereon the number 3066, and then and there the only railroad passenger ticket of said description and number in said office.    That said railroad passenger ticket was then and there the personal property of the Oregon-Washington Railroad & Navigation Company, a private corporation, and then and there evidence of the right of a passenger to transportation upon the railroad of said company, between the said points of Union, Oregon, and Portland, Oregon, and then and there of the value of $9.40."

A general demurrer to this indictment having been overruled, the defendant entered a plea of not guilty, and the resulting trial terminated in the conviction and sentence, from which the defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. R. J. Green.*

For the State there was a brief over the names of *Mr. Francis S. Ivanhoe,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Ivanhoe.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The theory of the prosecution, in support of which there was considerable testimony, is to the effect that

the defendant was a telegraph operator who had been in the employ of the company at Union, Oregon, and had been discharged. Afterwards, however, he gained access to the tickets on sale to passengers, and without the knowledge or consent of the agent in charge at that point abstracted the ticket in question and another from the rack where they were kept and, taking the stamp used for that purpose, post-dated it and stamped the ticket on the back. In fact, he admitted in his own testimony that he did so stamp the ticket. Soon afterwards he was apprehended in Baker, where he was trying to sell it. The contention of the defendant is that, in order to sustain a conviction for larceny of a railroad ticket within the meaning of Section 1947, L. O. L., the State must prove that the ticket when taken was a genuine effective railroad passenger ticket entitling the bearer or someone to passage on the road; that, inasmuch as the testimony disclosed that the selling agent was required to stamp the date of sale on the back of the ticket when selling it in the regular course of business, a ticket not so stamped, or stamped without authority, was not a ticket within the meaning of the statute noted above. This is the sole question raised by the defendant on this appeal. An excerpt from the statute referred to reads thus:

"If any person shall steal any goods or chattels or any Government note, bank note, promissory note, bill of exchange, bond or other thing in action, * * or any railroad, railway, steamboat or steamship passenger ticket or other evidence of the right of a passenger to transportation which is the property of another, such person shall be deemed guilty of larceny. * * "

1. It may be conceded that, as a railroad ticket is merely a conventional representative of value, it is not the subject of larceny at common law, but our statute has included many things in the category of that crime which were not regarded as such in the system of juris-

prudence from which our laws are derived. The question is reduced to this: Whether or not a ticket kept in its office by the railroad company for sale to those who thereafter propose to become passengers over its road is a railroad ticket within the meaning of the statute. The law does not require that the ticket shall be stamped with a date or any other mark before being used. The dating of the ticket depends upon a private regulation prescribed by the company for the government of its employees, and we are not aware that such a rule has the force or effect of statute law. Considering that merely as part of the testimony, it also appears in evidence that, when the tickets are issued ·by the company to its local agent, he is charged with the value of those tickets at the amount of fares which they stand for, and must either return the tickets uncanceled or the money which they represent. The larceny statute already noted was amended by the Legislative Assembly of 1905 (Laws 1905, c. 21) so as to include railroad tickets. At the same session an act was passed to prohibit forging or counterfeiting of railroad itckets, railroad transportation, and the like; and still further, at the same session, a law was promulgated regulating the sale of tickets of railroad companies and restricting to regularly appointed agents the power to dispose of them. These statutes clearly recognize as a railroad ticket such a token as the railroad company provided but had never delivered to a passenger. Taking all these statutes *in pari materia,* sound reason requires us to hold that such a ticket as described in the indictment while yet in the possession of the company, and not sold to an intending passenger, is a railroad ticket within the meaning of the statute against larceny. If it is property in the sense that it can be sold and its sale regulated by law, it must also be property so as to be the subject of larceny, although not yet issued to a passenger. It is a matter of common knowledge that

it is not only necessary for the convenience of the traveling public, but also for the conduct and management of a great enterprise like railway transportation, for a company in such a business to have its tickets ready for sale to passengers and to keep regular accounts of them, charging them to the agents to whom they are issued and again crediting the same tickets to them on their return. Such things are part of the necessary equipment of the business, and as such are a species of property entitled to the protection of the law.

Our attention has been directed to the case of *Patrick* v. *State,* 50 Tex. Cr. R. 496 (98 S. W. 840: 123 Am. St. Rep. 861: 14 Ann. Cas. 177), in which the property was described as "six railroad tickets reading from Texarkana, Tex., to Kansas City, * * the same being the corporeal personal property of and belonging to F. M. Gibson." The court by a majority opinion said: "Under our system we hold that some further description of the tickets alleged to have been stolen was necessary to be set out in the indictment. It may be that the indictment was good for theft of any unissued railroad tickets, but it was certainly not good for railroad tickets that had been issued by the company and entitling the holder thereof to transportation." It will be noted that these tickets were alleged to be property of a private person in whose hands we might concede them to be valueless or in fact not tickets within the meaning of the law, because he would have no right to them unless he had paid for them and they were issued to him as a passenger. The same doctrine is followed in the cases of *McCarty* v. *State,* 1 Wash. 377 (25 Pac. 299: 22 Am. St. Rep. 152), and *State* v. *Holmes,* 9 Wash. 528 (37 Pac. 283). These cases are evidently on indictments drawn under statutes which do not specifically name railroad tickets as a subject of larceny, but depend upon the general designation of personal property as the statutory term.

2. In general, it is sufficient to describe the property in the words of the statute which makes it a subject of larceny. Such is the doctrine of *Millner* v. *State*, 15 Lea (Tenn.) 179, and *Commonwealth* v. *Randall*, 119 Mass. 107, both of which are cases relating to the larceny of railroad tickets. A similar doctrine is laid down by this court in the case of *State* v. *Hinton*, 56 Or. 428 (109 Pac. 24), which was a case of larceny for a bill of exchange commonly called a bank check, and in the case of *State* v. *Morris*, 58 Or. 397 (114 Pac. 476), which was an indictment for the embezzlement of a promissory note. The case is analogous to, and ought to be governed by, the better reasoning of *Jolly* v. *United States*, 170 U. S. 402 (18 Sup. Ct. 624: 42 L. Ed. 1085), where the indictment charged the defendant with stealing from a postoffice building certain postage stamps of the United States of various denominations and of the value of $163.12, which stamps were the personal property of the United States of America. As in this case, while a railroad ticket in the possession of the company would not provide transportation for a passenger, so in that the postage stamps while in the possession of the Government would not authorize the carriage of a letter through its mails, yet the Supreme Court of the United States held the stamps to be the subject of larceny, saying: "The language used in the statute is much broader and covers more ground than the common-law definition of larceny, and it is also more comprehensive than the statute 1790. * * 'Any kind or description of personal property' is an exceedingly broad designation. It is difficult to imagine language which would be plainer in its meaning or which would more certainly embrace property such as is the subject of this indictment."

The denunciation of our statute is aimed against "any person who shall steal any goods or chattels," and later on particularizes by naming certain specific kinds of

property, among them "any railroad passenger ticket or other evidence of the right of a passenger to transportation which is the property of another." Within the meaning of the case of *Jolly* v. *United States,* this railroad ticket, although yet in the possession of the company, would be the subject of larceny because it is comprehended within the general term of "any goods or chattels" used in our statute. In view of the particular language used in our code, we are unwilling to be governed by the archaic refinements arising from a consideration of common-law larceny.

We find no error in the records justifying a reversal of the case, and the judgment of the court below is therefore affirmed. AFFIRMED.