O’CONNELL, J.
 

 The defendant was indicted for the crime of embezzlement. The lower court sustained a demurrer to the indictment and the plaintiff appeals.
 

 Defendant was the executive secretary of the Douglas County Tuberculosis & Health Association, a corporation. Defendant and. a Mrs. Petrequin were authorized to draw checks upon the Association’s bank account. The signatures of both were necessary
 
 *4
 
 in order to draw upon the account. It was the practice of Mrs. Petrequin to sign several checks in blank and to turn them over to defendant for use in paying the bills of the Association. Over an extended period defendant used some of these checks to pay her private electric bills with the Oalifornia-Oregon Power Company. \
 

 The indictment described the alleged crime as follows:
 

 “ALICIA IRENE TAUSCHER is accused by the Grand Jury for the County of Douglas, State of Oregon, by this Indictment of the crime of EMBEZZLEMENT committed as follows:
 

 “The said ALICIA IRENE TAUSCHER between the approximate dates of March 23, 1957 and April 22, 1959, in the said County of Douglas and State of Oregon, then and there being, and then and there being the agent and executive secretary of the Douglas County Tuberculosis & Health Association, a corporation, did then and there embezzle and fraudulently convert to her own use as parts of a systematic plan of peculation certain money, property or thing described as credits or deposits belonging to the said Douglas County Tuberculosis
 
 &
 
 Health Association whereby the United States National Bank of Portland, Oregon, Roseburg Branch, was the debtor or depository by improperly making and drawing checks on or against the said credits or deposits payable to the California Oregon Power Company, a corporation, in payment of an obligation due by the said Alicia Irene Tauscher to the said California Oregon Power Company and in excess of any proper or authorized amount owed and payable by the Douglas County Tuberculosis
 
 &
 
 Health Association to the California Oregon Power Company, which said excessive amount was and is the sum of $386.05, contrary to the statutes in such
 
 *5
 
 cases made and provided, and against the peace and dignity of the State of Oregon.”
 

 In sustaining the demurrer the trial court’s order recited that the indictment failed to state facts sufficient to constitute the crime of embezzlement “for the reason that it fails to allege that the defendant embezzled or fraudulently converted property within the meaning of the larceny statute (OES 164.310) as required by law * *
 

 It was further ordered that “the indictment be resubmitted to the grand jury of Douglas county for reconsideration and correction of the defect, if such can be accomplished under the law.”
 

 The state elected to stand upon the indictment as it was originally returned, whereupon the court entered judgment on the demurrer.
 

 Ijlt seems apparent that the indictment was framed with the purpose of charging the defendant with the crime of embezzlement under OES 165.005, which reads as follows:
 

 /“Any officer, agent, clerk, employe or servant of any person, partnership, association or any guardian, conservator, administrator or executor of any estate, any assignee for the benefit of creditors, or trustee or any other person acting as fiduciary who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, any money, property or thing belonging wholly or in part to such person, partnership, association, estate, creditors or debtor which is property within the meaning of OES 164.310 and has come into his possession or is under his care by virtue of his employment or appointment, whether or not he has any interest, divisible or indivisible, in such property, shall be deemed guilty of larceny /and shall be punished as pro- / &>.
 
 *6
 
 vided in ORS 164.310. The fact that such officer, agent, clerk, employe, servant, guardian, conservator, administrator, executor or assignee for the benefit of creditors, trustee or any other person acting as fiduciary has mixed such property with the money, property or thing of another person, partnership, association or estate shall not constitute a defense in a prosecution under this section.”
 

 It will be observed that ORS 165.005 refers to ORS 164.310, the larceny statute, for the definition of “property” which may be the subject of embezzlement and for the punishment to be imposed for the offense of embezzlement.
 

 ORS 164.310 reads as followsTl
 

 “(1) Any person who steals the property of another, or who wilfully takes, carries, leads or drives away the property of another with the intent to deprive such other of such property permanently, is guilty of larceny; and
 

 “(a) If such property exceeds $75 in value, shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years.
 

 “(b) If such property does not exceed $75 in value, shall be punished upon conviction by imprisonment in the county jail for not more than one year, or by a fine of not more than $500, or
 

 UÍÍ2) As used in subsection (1) of this section ^property’ means any real or personal property, including but not limited to:
 

 “(a) Any goods or Chattels.
 

 “(b) Any government note, bank note, coin, money, promissory note, bill of exchange, bond or other thing in action.
 

 “(c) Any book of accounts or order or certificate concerning money due or to become due or goods to be delivered.
 

 
 *7
 
 “ (d) Any deed or writing containing a conveyance of land or any interest therein.
 

 “(e) Any bill of sale or writing containing a conveyance of goods or chattels, or any interest therein.
 

 “(f) Any valuable contract in force.
 

 “(g) Any receipt, release, or defeasance.
 

 “(h) Any writ, process, or public record.
 

 “(i) Any railroad, railway, steamboat or steamship passenger ticket or other evidence of the right of a passenger to transportation.^
 
 xj
 

 appeal the state contends that although the facts recited in the indictment may not be sufficient to make out a case of embezzlement under OKS 165.005, the indictment is sufficient to charge the defendant with the crime of larceny, j
 

 The caption of the indictment describes the crime as “embezzlement.” It is true, ns the state contends, that an indictment may be good in spite of the error in designating the offense in the caption.
 
 State v. Elkins,
 
 216 Or 509, 339 P2d 715 (1959). But, as we stated in the latter case:
 

 “* * * This assumes, of course, that the charging part of the indictment so clearly alleges facts constituting a crime that the defendants would not reasonably be confused by the erroneous designation * * * [citing cases].” 216 Or at 512.
 

 In the case at bar both the caption and the charging part of the indictment designate the crime of embezzlement. As we said in
 
 State v. Wilcox,
 
 216 Or 110, 116, 337 P2d 797 (1959), “[although the use in an indictment of the name of a particular crime is not controlling of itself,
 
 Ex parte Harrison,
 
 55 Ariz 347, 101 P2d 457 (1940), it is a proper factor
 
 *8
 
 to consider, for ‘the meaning is to be determined from the whole instrument * * *’ in determining whether the accusation made against the defendant has been set out with sufficient certainty to satisfy the requirements of OBS 182.530 and OBS 132.540.
 
 State v. Jennings,
 
 131 Or 455, 461, 282 P 560, 562 (1929).”
 

 0?he indictment in the case at bar obviously was ted in terms of OBS 165.005, the embezzlement statute, and not in terms of OBS 164.310, the larceny statute. It alleges in the terms of OBS 165.005 that the defendant was an “agent”; that she did “embezzle and fraudulently convert” certain “money, property or thing.” The indictment does not charge, as is essential for the crime of larceny under OBS 164.310, that defendant stole, took, or carried away the property of another.
 

 We hold that the indictment is insufficient to charge the crime of larceny.
 

 We shall next consider whether the indictment is sufficient to charge the crime of embezzlement. The trial court sustained the demurrer to the indictment on the ground that the “credits or deposits” which she is charged with embezzling were not “property” within the meaning of OBS 164.310, the source of the definition of “property” subject to embezzlement under OBS 165.005.
 

 The checks which were employed as the vehicle for the misappropriations were signed by defendant and another, both as authorized co-signers. Thus the drawee bank was entitled to charge the Association’s account for the cheeks which it honored and paid. Consequently, there is no doubt that defendant deprived the Association of a valuable monetary interest. But the crime of embezzlement is not made
 
 *9
 
 out simply by proving the defendant acquired property -which was owned by her victim. Our criminal code contains a whole congeries of separate crimes having as their common ingredient the acquisition of another person’s property. However, each of these crimes has distinguishing statutory features which must be observed by the courts; and the distinctions must be observed even though we may regard them as anachronistic and archaic. Our criminal code preserves many of these distinctions just as, in many instances, it perpetuates in statutory form the common law definitions of particular crimes. Among the crimes so codified are three closely related crimes which are sometimes collectively referred to as the crime of theft, viz., larceny, embezzlement and obtaining property by false pretenses. They are specially noted here because the act for which defendant is charged falls into the general pattern which characterizes these three crimes.
 

 We shall first test the defendant’s act by the definition of embezzlement found in ORS 165.005.jWe shall assume that the evidence would establish that defendant was an “officer” or “agent” of the Association within the meaning of the statute.
 
 [To
 
 fall within the statute the defendant must be an agent “who embezzles or fraudulently converts to his own use” the property of another. The terms “embezzles” and “fraudulently converts” are synonymous.)
 
 People v. Riggins,
 
 13 Ill2d 134, 148 NE2d 450, 452 (1958);
 
 Metropolitan Life Ins. Co. v. Miller,
 
 114 Ky 754, 71 SW 921, 922 (1903);
 
 Hamilton v. State,
 
 46 Neb 284, 64 NW 965, 966 (1895); Perkins, Criminal Law (1957), 247. LAlthough embezzlement was not a crime at common law and is solely a creature of statute))
 
 State v. Coleman,
 
 119 Or 430, 435, 249 P 1049 (1926);
 
 *10
 

 State v. Browning,
 
 47 Or 470, 472, 82 P 955 (1905), Qt has a fairly well-established meaning describing the fraudulent appropriation of property the possession of which has been entrusted to the defendant!]
 
 The People v. Catcott,
 
 393 Ill 582, 67 NE2d 175, 176 (1946);
 
 State v. Bobbins,
 
 35 N J Super 494, 114 A2d 474, 476 (1955), affirmed 21 N J 338, 122 A2d 366.
 

 Unless the context demands a different interpretation the word “embezzles” in ORS 165.005 must be given its usual meaning. This rests upon the same principle as the familiar rule of statutory construction declaring that common law terms used in statutes are presumed to have been used in their common law sense.
 
 McNally v. Hill, Warden,
 
 293 US 131, 136, 55 S Ct 24, 79 L Ed 238 (1934);
 
 Thomas v. United States,
 
 189 F2d 494, 501 (6th Cir 1951);
 
 Bibb County v. Hancock,
 
 211 Ga 429, 86 SE2d 511, 519 (1955) ;
 
 Magierowski v. Buckley,
 
 39 N J Super 534, 121 A2d 749, 760 (1956);
 
 Traxler v. State,
 
 96 Okla Crim 231, 251 P2d 815, 829 (1952).
 

 ^VVe cannot, therefore, regard the statutory term “embezzles and fraudulently converts” in a popular sense, as describing generally any act by which a person misappropriates another’s property.
 
 State v. Hanna,
 
 224 Or 588, 356 P2d 1046 (1960). The other terms of ORS 165.005 reinforce the idea that the restricted meaning of embezzlement was intended. The crime is committed only if the defendant embezzles property which “has come into his possession or is under his care.” “Property,” as defined by ORS 165.005, is “any money, property or thing * * * which is property within the meaning of ORS 164.310,” the larceny statute.
 

 The crucial question in the case at bar is whether defendant had in her possession or under her care
 
 *11
 
 “property” within the meaning of ORS 165.005 and hy reference, ORS 164.810.
 

 With respect to the Association’s checking account, until defendant executed the checks which eventually were delivered to the power company she did not have in her
 
 possession
 
 anything belonging to the Association. The deposit of funds by the Association to its checking account in the drawee bank created a creditor-debtor relationship between the Association and the drawee
 
 bank. Brown v. New York Life Ins. Co.,
 
 152 F2d 246, 249 (9th Cir 1945);
 
 Dahl & Penne v. State Bank of Portland,
 
 110 Or 68, 71-72, 222 P 1090 (1924); 5 Zollman, Banks & Banking (1986), §3153, p. 132. The Association, as a general depositor, owned only a simple chose or thing in action.
 
 Anderson Nat. Bank v. Luckett,
 
 321 US 233, 248, 64 S Ct 599, 88 L Ed 692, 151 ALR 824 (1944);
 
 State v. Northwestern National Bank of Minneapolis,
 
 219 Minn 471, 18 NW2d 569, 576 (1945);
 
 Meyer v. Meyer,
 
 124 N J Eq 481, 2 A2d 467, 468 (1938);
 
 Chapman v. White,
 
 6 N Y 412, 417, 57 Am Dec 464 (1852); 5 Zollman, Banks & Banking (1936), §3153, p. 147. (Whether such a contract right may be regarded as “property” depends upon the manner in which the word “property” is defined. J 4 Corbin, Contracts (1951), §860; Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning, 23 Yale L J 16 (1913), and 26 Yale L J 710 (1917).
 

 If we define property broadly to include all rights which are of value, a chose in action would fall within the definition. Brown, Personal Property (2nd Ed 1955), §7, p. 13. And courts have construed the term “property” in this broad sense in cases where it reasonably appears that ownership interests which
 
 *12
 
 are not capable of possession were meant to be encompassed within the term. Thus, in
 
 Smith v. Ajax Pipe Line Co.,
 
 87 F2d 567 (8th Cir 1937) a depositor’s right in a bank account was held to be “intangible property” for purposes of taxation. And in
 
 Tracy v. Lucik,
 
 138 Fla 188, 189 So 430 (1939) a bank account credit was described as “personal property” which could come within a statute exempting certain property from execution. In
 
 Justis v. Atchison Etc. Ry. Co.,
 
 12 Cal App 639, 108 P 328 (1910) a cause of action for a wife’s personal injuries was characterized as community property. So also in
 
 Everts v. Will S. Fawcett Co.,
 
 24 Cal App2d 213, 74 P2d 815 (1937) a cause of action for fraud was held to be “property” subject to execution. And a husband’s cause of action for his damages resulting from personal injuries to his wife is “property” within the due process clause of the Fourteenth Amendment to the U. S. Constitution.
 
 Womach v. City of St. Joseph,
 
 201 Mo 467, 100 SW 443, 446 (1907).
 

 On the other hand, where the term “property” is used in a context indicating that only physical property capable of possession is envisaged, the courts have accordingly limited the meaning of the term. Thus, a bank deposit is not “property” within the meaning of the terms of a note giving the bank a lien on the property of the depositor enforceable by sale of the property.
 
 People’s National Bank of Pulaski v. Hewitt,
 
 226 App Div 412, 235 NYS 392, 395 (1929), modified and affirmed 253 NY 523, 171 NE 765 (1930). And a statute authorizing double recovery against a person who “embezzles, conceals, smuggles or fraudulently disposes of any property of a decedent” applies only to tangible property.
 
 Bogan v. Wiley,
 
 90 Cal App 2d 288, 202 P2d 824, 827
 
 *13
 
 (1949). We shall assume that a chose in action may, in the proper context, be regarded as property.
 

 The interest which the Association had in the cheeking account was an
 
 intangible
 
 chose in action. This type of chose is to be contrasted with
 
 tangible
 
 choses in action, a term used to describe certain commercial documents such as bonds, bills of exchange, bank checks and promissory notes. These instruments are referred to as tangible choses in action because they are regarded “as tangible representations of the contract obligations they embody,” Brown, Personal Property (2nd Ed 1955), §59, p. 186, and as such are regarded as assuming “the qualities of tangible things.” Ibid., § 7, pp. 13-14. It will be noted that ORS 164.310 (2) (b) includes choses of this type. Such tangible choses are capable of being possessed; intangible choses are not.
 

 [if the crime of embezzlement cannot be committed under ORS 165.005 unless the accused has actual possession of the property of the principal, then defendant here would not be guilty of embezzling the Association’s property represented in the checking account because she did not, and could not, have possession of that intangible interest of the Association. On the other hand, if actual possession is not necessary, or if defendant could be regarded as having had possession of a tangible chose in action (i.e., the check which she executed and which was in her possession prior to delivery to the power company), then she could be guilty of the crime of embezzlement.
 

 We shall first consider the question of whether defendant’s possession of the check constituted possession of a tangible chose or thing in action. There is no doubt that if she had received a check made
 
 *14
 
 payable to the Association and then had fraudulently converted it, the crime of embezzlement would have been committed. In such a case the delivery of the check to the Association would give legal effect to the instrument and would create in the payee a property interest in a tangible chose in action. Before delivery however, an executed check in the hands of the drawer does not change any legal relations whatsoever ; it is nothing more than a piece of paper in the possession of the drawer. The same is true of a Check of the drawer drawn by its agent. In the case at bar, while the cheek was in the possession of the Association (through the possession of defendant, its agent) it had no legal value, except the intrinsic value of the paper. And we note that defendant was not charged with embezzling the piece of paper. We do recognize that blank checks are property which may be the subject of
 
 theft. Keller v. United States,
 
 168 Fed 697 (7th Cir 1909).
 

 It has been held that an undelivered check is not “property.”
 
 Bogan v. Wiley,
 
 90 Cal App2d 288, 202 P2d 824 (1949);
 
 State v. Wilcox,
 
 179 SW 482 (Mo 1915). See,
 
 Morgenthau v. Fidelity & Deposit Co. of Maryland,
 
 94 F2d 632, 635 (D. C. Cir 1937). But cf.,
 
 People v. Hart,
 
 28 Cal App 335, 152 P 947, 948 (1915) (express checks taken from payee to whom they had been issued held subject to embezzlement although payee’s countersignature was necessary to validity);
 
 People v. Cohen,
 
 71 Cal App 367, 235 P 658 (1925) (same, except express check not, at the time of taking, made payable to or issued to a payee). Contra:
 
 State v. Sage,
 
 22 Idaho 489, 126 P 403, 405 (1912) (but statute expressly provided that evidence of indebtedness negotiable by delivery only, could be the subject of embezzlement regardless of delivery).
 

 
 *15
 
 In
 
 Worsham v. State,
 
 56 Tex Crim 253, 120 SW 439 (1909), defendant cashed a check which the drawer had thrown away, a fact of which defendant was aware when he appropriated the check. In holding that defendant conld be guilty of embezzlement, the court reasoned that since the delivery of a negotiable instrument is not essential to its validity in the hands of a holder in due course (which, under § 15 of the Negotiable Instruments Law, would be true only if the undelivered instrument had been completed by the drawer) an undelivered instrument could be the subject matter of embezzlement. The theft statute there applicable contained the qualifying clause “provided such property possesses ascertainable value.” The court concluded that the statute was broad enough to cover the case presented. Although the check had a potential value as to a holder in due course, it is difficult to see how it could represent more than the value of the paper itself as to the drawer or one who knew, as defendant did, that the cheek was discarded.
 

 In the case at bar, we are of the opinion that the checks, while in the defendant’s possession, were not tangible choses in action. Thus the checks were not “property” within OBS 165.005 and OBS 164.310. Therefore, defendant did not and could not embezzle the checks. And, as we have noted, defendant is not charged with having embezzled the pieces of paper.
 

 The remaining question is whether defendant embezzled a chose in action.
 

 We have observed that the Association had a simple, intangible chose in action against the bank, consisting of the credit to its cheeking account, and that such a chose is not capable of being possessed. We now reach the further inquiry: Did the delivery
 
 *16
 
 of the check and its presentment to the bank convert this chose into tangible property in the possession of the Association and defendant! Some courts have so concluded but we believe that their analysis is faulty.
 

 People v. Keller,
 
 79 Cal App 612, 250 P 585 (1926) will illustrate the point. In that case the defendant drew a check on the account of a corporation for which he was an agent. The check was made payable to the defendant’s personal creditor. It was held that defendant had committed the crime of embezzlement. The court conceded that the money deposited by the corporation was the property of the bank and that the relation between the bank and the corporation was that of debtor and creditor respectively. But, explained the court, when the check was presented and payment was made to the forwarding bank, the money paid “became, for an instant of time at least, however short, the property of the depositor,” i.e., the corporation. The court reasoned as follows:
 

 “* * * The acceptance of the cheek by the Santa Ana Bank, the surrender of the instrument to it, the payment of the money to the forwarding bank and the entry of the transaction upon the books of the Santa Ana Bank constituted a segregation or separation of the amount of dollars expressed in the check from the general mass of money in the bank as the portion owing by it to appellant’s principal. At the very moment the money represented by the check was thus separated from the general mass of money in the Santa Ana Bank the title to the funds so segregated passed from the bank to appellant’s principal at least for an instant of time.” 79 Cal App at 615.
 

 It was not explained how the constructive or fictitious “segregation” operated to put the possession of the segregated moneys into the hands of the defend
 
 *17
 
 ant; and that would he necessaryto constitute embezzlement as it is usually defined.j
 

 Similar reasoning was used in
 
 Bartley v. State,
 
 53 Neb 310, 73 NW 744, 752 (1898). In that case the court said that the “legal effect” of the transaction was the same as if the defendant had himself presented the Check for payment and the bank teller had placed the money “in a pile on the counter, and then, by direction of the defendant, applied the same in payment of the warrant.” The court added, without benefit of explanation, “ [t] o constitute embezzlement, it was not necessary that the defendant himself should have acquired the physical or manual possession of the money.” See, also,
 
 Ex parte Hedley,
 
 31 Cal 109 (1866);
 
 State v. Bussa,
 
 176 La 87, 145 So 276, 280 (1932);
 
 State v. Peterson,
 
 167 Minn 216, 208 NW 761, 763 (1926);
 
 Territory v. Hale,
 
 13 N M 181, 81 P 583, 585 (1905).
 

 We are unable to Mlow the courts’ reasoning in the foregoing cases. [Even if we were to accept (which we do not) the fiction that the bank segregates a part of its funds upon the presentment of a check, and further accepting (as we do not) the fiction that the possession constructively vests in the depositor, we cannot bring ourselves to take the next step and, by fiction, put the defendant in possession of the money. Under our embezzlement statute the defendant must have possession of the property embezzled. We shall not distort the statute to cover acts not falling within itjWhat was said in
 
 State v. Miller,
 
 192 Or 188, 199, 233 P2d 786 (1951), with respect to our false pretenses statute is applicable here. There, Justice Lusk, speaking for this court said:
 

 “* * * The legislature has not undertaken to make every fraud a crime, but has set bounda
 
 *18
 
 ries around the crime of false pretenses which the courts must respect and have no authority to pass. State v. Tower, supra [122 Kan 165, 251 P 401, 52 ALR 1160 (1926)].”
 

 Hill v. State,
 
 159 Tenn 297, 17 SW2d 913 (1929), also a case involving misappropriation by an agent through the withdrawal of funds from his employer’s account, supports our view. There, the court, in holding that the withdrawal was not an embezzlement, said:
 

 “To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated 'by him before it goes into the possession of the employer [citing cases].” 17 SW2d at 914.
 

 We do not believe that the shifting of credits in the process of honoring and paying a check constitutes the vesting of the possession of the money paid in the depositor’s agent who drew the check.
 

 \we have concluded that defendant was not actually in possession of property of the Association. We next inquire whether actual possession of property by the accused is necessary to constitute the crime of embezzlement under OES 165.005. This section refers to property “which has come into his [the agent’s] possession
 
 or is under his
 
 care.” (Emphasis supplied.)^
 

 Broadly speaking a principal’s checking account in a bank, upon which the agent is authorized to draw in the course of his employment, although not in “his [the agent’s] possession,” is “under his care.” Embezzlement statutes in other states using similar language have been so construed. In those states the misappropriation by an agent of his principal’s funds
 
 *19
 
 in a checking account by an unauthorized withdrawal has been held to constitute an embezzlement.
 
 People v. Hess,
 
 107 Cal App2d 407, 237 P2d 568, 577 (1951) ;
 
 People v. Hess,
 
 104 Cal App2d 642, 234 P2d 65, 85 (1951), dismissed 342 US 880, 72 S Ct 177, 96 L Ed 661;
 
 People v. Knott,
 
 15 Cal2d 628, 104 P2d 33, 34-35, 128 ALR 1367 (1940);
 
 State v. Lockie,
 
 43 Idaho 580, 253 P 618, 620 (1927);
 
 People v. Lay,
 
 193 Mich 476, 160 NW 467, 471 (1916). See,
 
 State v. Johnson,
 
 109 Kan 239, 199 P 104, 106 (1921);
 
 State v. Bussa,
 
 176 La 87, 145 So 276, 280 (1932);
 
 State v. Lomax,
 
 322 Mo 86, 14 SW2d 436, 438 (1929);
 
 Territory v. Hale,
 
 13 N M 181, 81 P 583, 585 (1905);
 
 Young v. State,
 
 44 Ohio App 1, 184 NE 24, 27 (1932). Cf.,
 
 Hill v. State,
 
 159 Tenn 297, 17 SW2d 913, 914 (1929) (statutory crime of fraudulent breach of trust).
 

 [If we were permitted to look only to OBS 165.005 for the definition of the crime of embezzlement we would not hesitate to follow the foregoing cases and construe the term “under his care” to include the misappropriation of funds in the manner in which the misappropriation was accomplished by this defendant, i.e., the misapplication of bank credits. But OBS 165.005 cannot be read alone; by its very terms we are required to read it with reference to OBS 164.310. Consequently, to constitute embezzlement the property misappropriated by the agent which “has come into his possession or is under his care” is property as defined in OBS 164.310. And, it is important to note, OBS 165.005 does not simply incorporate the items of property listed in OBS 164.310 (2); the reference in OBS 165.005 is to that “which is property
 
 within the meaning of OBS 164.310.”
 
 (Emphasis supplied.) In other words, only that property which is the subject of larceny can be the subject of em
 
 *20
 
 bezzlement. This we have held in
 
 State v. Cooke et al.,
 
 130 Or 552, 556, 278 P 936 (1929). Since the property which was misappropriated in the present case was an intangible chose or thing in action, the question is whether such an intangible interest is subject to larceny.
 

 We note that under subsection (2) (b) of OPS 164.310 “property” means, “Any government note, bank note, coin, money, promissory note, bill of exchange, bond
 
 or other thing in action.”
 
 (Emphasis added.) We construe the phrase “or other thing in action” as descriptive of the same type of thing in action as those specifically described in the section, viz. money in various forms, promissory notes, checks and bonds.
 
 Noscitur a sociis.
 
 This construction is consistent with our previous cases construing OPS 164.3%1
 

 In
 
 State v. Dooley,
 
 102 Or 563, 203 P 304 (1922), in referring to a statute which is now OPS 164.310, it was observed that “[t]his section was designed to cover only those cases which would have been larceny at common law. All of the essential features which were necessary to establish larceny at common law are still requisite to sustain a conviction under this statute, among which is the requirement that to constitute the offense of larceny, it must appear that the taking of the property amounted to a trespass.” 102 Or at 564-565.
 

 The court’s statement that the statute was designed to cover only those cases Which would have been larceny at common law cannot be taken literally because it is clear that some of the provisions of the statute were designed to include thefts which were not larcenous at common law. Thus, for example, the various tangible dioses in action listed in OPS 164.310
 
 *21
 
 (2) (b) were not the subject of larceny at common law.
 
 Jolly v. United States,
 
 170 US 402, 405, 18 S Ct 624, 42 L Ed 1085 (1898);
 
 State v. Wilson,
 
 63 Or 344, 346, 127 P 980 (1912); Brown, Personal Property (2nd Ed 1955) §7, p. 14; Clark & Marshal, Crimes (6th Ed 1958) § 12.01, pp. 717-719; 4 Stephen’s, Commentaries on the Laws of England (21st Ed 1950) p. 89; Perkins, Criminal Law (1957) p. 193; 2 Wharton, Criminal Law and Procedure (1957) § 491. But the statement in
 
 State v. Dooley,
 
 supra, was apparently intended to mean only that the fundamental elements necessary to constitute larceny at common law are preserved by statute in Oregon.
 
 ①
 
 These elements are listed in Perkins, Criminal Law (1957) p. 190, as follows: “There must be the (1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal.”
 

 In all the subsections of ORS 164.310 (2) the property which is made subject to larceny is in each instance a tangible thing. And this is true where the thing designated as property is but a memorial or record of the owner’s interest. Thus, subsection (c) designates “any book of accounts or order or certificate concerning money due or to become due or goods to be delivered.” And subsections (d) and (e) designate respectively the writings by which interests in real and personal property are transferred. We construe subsection (f), “any valuable contract in force,” to/mean the writing which evidences contract rights.
 

 A further aid in the construction of ORS 165.005 is found by contrasting it with other embezzlement
 
 *22
 
 statutes in ORS eh 165. Both ORS 165.035 (embezzlement by bank official or employe) and 165.040 (embezzling funds of a savings and loan association) include “credits” as the subject matter of criminal misappropriation. The inclusion of the term in these sections, and the failure to include it in ORS 165.005 must be regarded as indicating a legislative intent to exclude from the crime defined in the latter section the misapplication of credits.
 
 1
 

 In several of our cases we nave defined larceny in terms of a trespassory taking.
 
 Plummer v. Kingsley,
 
 190 Or 378, 387, 226 P2d 297 (1951);
 
 State v. Johnston,
 
 143 Or 395, 399, 22 P2d 879 (1933);
 
 State v. Broom et al.,
 
 135 Or 641, 645, 297 P 340 (1931);
 
 State v. Coleman,
 
 119 Or 430, 435-436, 249 P 1049 (1926);
 
 State v. Browning,
 
 47 Or 470, 472, 82 P 955 (1905).
 

 In
 
 State v. Miller,
 
 192 Or 188, 193, 233 P2d 786 (1951), opinion by Mr. Justice Lusk, the court was called upon to construe what is now ORS 165.205, our basic false pretenses statute. After noting that the source of our statute was the common law and statute of England, and that “the thing obtained must be the subject of larceny at common law,” the court concluded that the statute would apply only where the property obtained was a tangible thing. The court quoted from
 
 People v. Cummings,
 
 114 Cal 437, 46 P 284-285 (1896) where it was said: “[T]he offense of false pretenses under the English statutes has always been construed as largely analogous to and closely bordering upon that of larceny and as applying only to personal property which was capable of manual delivery * * *.” The court also referred to
 
 State v. Tower,
 
 122 Kan 165, 251 P 401, 405, 52 ALR 1160 (1926) where, in interpreting the Kansas false pre
 
 *23
 
 tenses statute, it was said: “Mere pecuniary advantage, devoid of any physical attribute of money, chattel, or valuable security, in the sense of the English statute was not included.”
 

 Justice Lusk further noted that “this court recognized that ‘property’ under the statute must be something capable of being possessed,” 192 Or at 196, relying upon
 
 State v. Germain,
 
 54 Or 395, 399, 103 P 521 (1909). Since, as explained by
 
 State v. Miller,
 
 supra, and the cases upon which it is based, the crime of false pretenses is analogous to the crime of larceny, these cases support our conclusion that only property which is tangible and capable of being possessed may be the subject of larceny under OBS 164.310 and embezzlement under OBS 165.005.
 

 fin making this interpretation we have not been unmindful of OBS 161.050 which requires that our criminal statutes “shall be construed according to the fair import of their terms with a view to effect their objects and to promote justice.” But even with this legislative encouragement to construe our criminal statutes liberally, we are not entitled to expand OBS 165.005 beyond the limits which the legislature has set in defining the crime of embezzlement. It is unfortunate that OBS 165.005 and 164.310 are so narrowly drawn. However, the task of remodeling these statutes is for the legislature and not for the courts.
 

 We hold that defendant’s acts constitute neither embezzlement nor larceny. Whether she can be charged with some other crime we do not propose to pass upon at this time.
 

 Judgment affirmed
 

 ①
 

 That our statutory crime of larceny is more inclusive than common law larceny was recognized long before the
 
 Dooley
 
 case: “* * * as a railroad ticket is merely a conventional representative of value, it is not the subject of larceny at common law, but our statute has included many things in the category of that crime which were not regarded as such in the system of jurisprudence from which our laws are derived.”
 
 State v. Wilson,
 
 63 Or 344, 346-347, 127 P 980 (1912).