Argued November 1, affirmed December 20, 1961; petition for
rehearing denied January 30, 1962

# STATE OF OREGON *v.* BENGTSON

367 P. 2d 363

*Leo Levenson*, Portland, argued the cause for appellant. With him on the brief were Richard R. Carney, Portland and Robert A. Boyer, Medford.

*Paul W. Haviland*, Special Prosecutor, Medford, argued the cause for respondent. With him on the brief were Paul W. Haviland, Haviland & Clinkinbeard, Medford.

Before ROSSMAN, Presiding Justice, and WARNER, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

## SLOAN, J.

Defendant was convicted of embezzlement and appeals. There are several assignments of error. We will relate the material facts and then consider the assignments. The facts are not materially disputed. The basic contentions concern the application of the law to the facts.

The indictment charged:

"The said O. H. Bengtson on or about the 21st day of October, 1959, in the said County of Jackson and State of Oregon, then and there being, and then and there being an officer of Medford Escrow Company, Inc., a corporation, there did then and there come into his possession and be under his care by virtue of his employment as such officer divers moneys and silver coins, paper currency, bank bills and currency bills, money of the United States of America, checks, notes, drafts and other valuable securities, a more particular description of any of which said property being to the grand jury unknown, to the amount and of the value of $3,701.14, all being the trust property of the said Medford Escrow Company, Inc., a corporation, the said O. H. Bengtson then and there so having in his possession and under his care as such officer the said trust property of the said Medford Escrow Company, Inc., a corporation, did then and there unlawfully and feloniously embezzle and fraudulently convert the same to his own use."

Defendant was an attorney practicing in Medford. He was also the substantial owner and managing officer of the corporation named in the indictment as Medford Escrow Company, Inc. The business of this corporation was conducted in the same office in which defendant practiced law. We will refer to the corporation as Escrow. Defendant exercised supervisory control over the business conducted by Escrow. The day to day operation of the business was conducted by an employe named Rachel Carter. She was referred to in the record as Rachel. We will identify her by the same name. She was officially designated as President of Escrow. This official title apparently was in name only; although she was more than a figurehead. She did do the bookkeeping, she accepted and remitted

moneys due to and paid by Escrow. She was authorized to and did execute receipts, checks and other instruments in its name. She dealt with Escrow's customers. The record is not clear as to her entire responsibility but the evidence would permit an inference that she operated the business with only general or even casual supervision from defendant. The question of her status is primarily pertinent in respect to one issue presented on this appeal that will be referred to later.

In June or July of 1959 Escrow received $3,566 in full payment of a mortgage that it had held for collection. The mortgage had been owned by a Mr. and Mrs. McGray. When this sum was received the McGrays instructed Rachel to hold the money and make another loan. At the time either Rachel or defendant or both of them advised Mrs. McGray that a loan could possibly be made to a Mrs. Young. Escrow held the money in its bank account. From the date this money was received until after the date of the alleged embezzlement some negotiations were conducted between defendant and Mrs. Young relative to a loan to her. The loan was not made.

At about this same time defendant became obligated to pay to other persons the sum of $5,000. The obligation resulted from a claim of malpractice against defendant as an attorney for failure to file an action before the expiration of the statute of limitations applicable to the particular case. The claim ripened into a fixed indebtedness by an agreement entered into between defendant and the malpractice claimants to settle the claim for $5,000. It is not clear when this agreement was made. It was made prior to October 21, 1959.

On October 21, 1959, defendant handed Rachel two checks payable to defendant. The checks were the pro-

ceeds of savings accounts previously held by defendant in a savings and loan association. The total sum represented by the checks was $1,016.12. These checks have no material significance. They are only mentioned to explain the total transaction in question. Defendant instructed Rachel to issue to him a check on Escrow for the difference between the sum of the two checks just described and $5,000, and to prepare the checks for deposit in his personal account at the bank. She did as directed. She endorsed one of the checks from the savings association; the other check was endorsed by defendant. She then drew the critical check on Escrow's account payable to defendant in the sum of $3,701.14. She endorsed that check "For deposit to personal account of O. H. Bengtson," and prepared a deposit slip for his account accordingly. There can be no doubt but that the payment of this check substantially depleted Escrow's account. There is equally no doubt but at the time Rachel was acting in her capacity as a functionary, by whatever title, of Escrow.

Defendant took the deposit to the bank; deposited the checks to his account. As a part of the same transaction he immediately bought a bank draft for $5,000 payable to the persons to whom he was indebted, and he appears to have gone directly from the bank and delivered the bank draft to the attorney representing the persons involved.

"* * * Cashier's checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, * * *" 7 Am Jur § 525, p 379

*State v. Peterson*, 1926, 167 Minn 216, 208 NW 761.

Other pertinent evidence will be mentioned as we discuss the assignments. Defendant offered no evi-

dence so all of the facts and inferences must be elicited from the state's evidence.

The first assignment is directed at the indictment. Defendant claims the indictment is faulty for various reasons. We find no merit in the contention. For convenience we set forth ORS 165.005; the statute alleged to have been violated:

> "Any officer, agent, clerk, employe or servant of any person, partnership, association or any guardian, conservator, administrator or executor of any estate, any assignee for the benefit of creditors, or trustee or any other person acting as fiduciary who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, any money, property or thing belonging wholly or in part to such person, partnership, association, estate, creditors or debtor, which is property within the meaning of ORS 164.310 and has come into his possession or is under his care by virtue of his employment or appointment, whether or not he has any interest, divisible or indivisible, in such property, shall be deemed guilty of larceny and shall be punished as provided in ORS 164.310. The fact that such officer, agent, clerk, employe, servant, guardian, conservator, administrator, executor or assignee for the benefit of creditors, trustee or any other person acting as fiduciary has mixed such property with the money, property or thing of another person, partnership, association or estate shall not constitute a defense in a prosecution under this section."

■ When the indictment is compared with the statute it is found to include every element necessary to charge the crime. The defendant was notified of the charge against him. The crime was identified sufficiently so that he could not again have been charged with the same offense. *State v. Cooke et al*, 1929, 130 Or

552, 278 P 936. *State v. German,* 1939, 162 Or 166, 90 P2d 185.

■ By assignment No. II defendant claims that the court erred when it failed to sustain defendant's motions for acquittal and for a directed verdict. In his brief defendant divides this assignment into four separate contentions. We will mention and discuss each contention in turn. Some of these separate contentions are interwoven with argument not germane to the subject matter of the particular contention. We have not attempted to answer each argument advanced.

Contention No. I states:

"There Was a Failure of Proof that Defendant Embezzled 'the Trust Property' of Escrow."

Defendant argues that Escrow did not hold this money as a fiduciary because it was deposited in an unsegregated bank account. The argument has no merit. It would be a strange holding indeed for this court to say that a fiduciary can destroy the status of trust money by placing it in his own bank account. It is also to be observed that the statute states that it shall be no defense to a charge defined by the statute that the fiduciary has mixed the property with that of other persons. As a part of this same contention defendant also argues that Escrow's possession of the McGray money was that of a bailee. This is so, defendant says in his brief, because it was left with Escrow as a special deposit "to be loaned out or 'reinvested to Mr. Bengtson,' . . .", and that, therefore, Escrow had possession only of the money. Defendant relies on the general rule that a bailee has only possession and a trustee has title. The evidence does not support the argument. The evidence permitted the jury to find that Escrow held the fund as trustee for the limited

purpose of making a legitimate, valid loan. Escrow held the money as a fiduciary for that purpose. It was only necessary to prove that Escrow did not hold the money for any use it desired to make of it. *Livingston v. Rein*, 1943, 133 NJ Eq 585, 33 A2d 840. *People v. Meadows*, 1910, 199 NY 1, 92 NE 128.

The exact legal status by which Escrow held this money was not necessarily material. It was material that defendant took and converted money of Escrow which came into his hands as an officer and fiduciary of Escrow—not of McGrays. The indictment charged taking money from Escrow, not McGrays.

The above quoted statement that the money could be "reinvested to Mr. Bengtson" finds no support in the record. There was not one word of evidence that a loan or any use of the money by defendant was ever mentioned to the McGrays.

■ This brings us to contention No. II under the second assignment of error which is:

"There is a Failure of Proof that the Loan to the Defendant Was Not Authorized."

Although this was a question of fact settled by the jury the evidence was convincing that if defendant had that intention when he took the check from Rachel he quickly changed it to an intent to convert to his own use. There is no evidence that defendant ever executed any kind of a document to evidence such a loan, much less secure it. Since defendant did not testify the only evidence that the transaction was a loan came from the witness Rachel. She testified that defendant told her he was borrowing the money. The other evidence could have caused the jury to believe that defendant lied when he so informed Rachel. He never notified McGrays that he was the recipient of a

loan from these funds although he had ample opportunity to do so. He did cause Escrow to later send three payments of $50 each to Mrs. McGray but she was led to believe the payments were from other sources. Although defendant says that his claim that this transaction was a loan is proof that he had no intent to embezzle the whole of the evidence in this regard creates a strong inference to the contrary.

■ Contention No. III is directed particularly at the failure to direct a verdict of not guilty. The arguments contained in this part of defendant's brief are largely repetitious of that before mentioned. He does present one additional question that was not raised during the trial and is not available here.

Contention No. IV of assignment No. II claims that our recent decision in *State v. Tauscher*, 72 Adv Sh 809, 227 Or 1, 360 P2d 764, decided April 12, 1961, controls the decision in this case. The instant case is clearly distinguishable on the facts. The defendant Tauscher never had in her possession anything but a check drawn on her employer payable to a third person. In the instant case defendant had Escrow's check payable to himself. The instrument which Escrow entrusted to defendant was an order upon the bank with which defendant could, and did, demand from the bank possession of the Escrow's account with the bank. *Grossmayer Co. v. Campbell*, 1958, 214 Or 265, 277, 328 P2d 320, 62 ALR 1116; *New Amsterdam Casualty Co. v. Robertson*, 1929, 129 Or 663, 278 P 963, 64 ALR 1396. It was the "vehicle" which gave him access to the fund. *State v. Germain*, 1909, 54 Or 395, 400, 103 P 521. He gained possession of the check and with it obtained possession of Escrow's account only because he was an officer of Escrow. His position as an officer

of the Escrow gave him the custody and possession of the funds of the corporation. He used his position as an officer to fraudulently transfer the account to his own use.

At the time defendant received the check he had available to him the choice to use the proceeds of the check for the lawful purpose which gave him the only right to possess the fund at all—to make a valid loan to Mrs. Young or some other person. He chose to divert the money to his own use. This was embezzlement. *State v. Johnston*, 1933, 143 Or 395, 404, 22 P2d 879, *People v. Meadows*, supra, 92 NE 128. Although a challenged instruction given by the trial court in *State v. Johnston*, supra 143 Or at 403 did not receive direct approval of the court it certainly received tacit approval. The elements of embezzlement contained in that instruction are almost identical to the circumstances of this case. The instruction expresses the law in respect to this type of a case with unusual clarity. We hold it to be applicable here.

■ Contention No. V of assignment II states:

"Rachel Peterson Carter was an Accomplice as a Matter of Law."

The evidence does not support the contention. She may have been guilty. If she knowingly participated in the taking of the money she may have been an accomplice. But the only evidence in the record is that she did not know. We do not know if she innocently or deliberately misled Mrs. McGray. All we have is her own testimony and that does not implicate her as a matter of law. The court properly submitted this question to the jury and the jury presumably found she was not.

■ Assignment of Error No. III says that ORS

44.040 (f) should have precluded the admission into evidence of some of Rachel's testimony. The statute provides:

> "A stenographer shall not, without the consent of his or her employer, be examined as to any communication or dictation made by the employer to him or her in the course of professional employment."

The challenged testimony of Rachel did not emanate from such status as she had as a stenographer. The acts and conduct which she related were directly concerned with her duties as a responsible employe of Escrow. If we discount the title of President, which she held, her duties in the respect to which she testified were not those of a stenographer. As before mentioned, the evidence from all of the witnesses indicated that she functioned as a manager or executive of Escrow and had many responsibilities not normally performed by one who does nothing more than translate one form of communication into another. It is not necessary here to attempt to define who may be a stenographer under given circumstances whose lips would be sealed by this statute. It is enough to say that this witness was not.

Assignment No. IV claims it was error to have failed to instruct the jury that Rachel was an accomplice as a matter of law. There is no claim that the instruction given was at fault in any other particular. What has already been said disposes of this assignment. The evidence did not warrant the finding as a matter of law.

■ The last assignment charges error in the failure to give a requested instruction that the jury could have found defendant not guilty if the transaction between Escrow and defendant were a loan. The court

otherwise instructed the jury so carefully as to each element it had to find before a guilty verdict could be reached that no juror could possibly have believed that defendant was guilty if the transaction were in any way a loan.

We have examined all of the assignments and find no error. Affirmed.