Argued March 31, affirmed April 27, 1972

STATE OF OREGON, *Respondent, v.* MARVIN
CHEEK (No. 71-134 C), *Appellant.*

496 P2d 223

*Enver Bozgoz*, Klamath Falls, argued the cause and filed the brief for appellant.

*Al J. Laue*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant appeals from a conviction for embezzlement by an employe in violation of former ORS 165.005. He presents the following assignments of error: (1) defendant's motion for judgment of acquittal should have been granted at the end of the state's case in chief; (2) defendant's motion for directed verdict should have been granted after all the evidence

had been presented; and (3) the trial judge should have given two instructions requested by the defendant.

Former ORS 165.005 provided:

"Any officer, agent, clerk, employe or servant of any person, partnership, association or any guardian, conservator, administrator or executor of any estate, any assignee for the benefit of creditors, or trustee or any other person acting as fiduciary who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, any money, property or thing belonging wholly or in part to such person, partnership, association, estate, creditors or debtor, which is property within the meaning of ORS 164.310 and has come into his possession or is under his care by virtue of his employment or appointment, whether or not he has any interest, divisible or indivisible, in such property, shall be deemed guilty of larceny and shall be punished as provided in ORS 164.310. * * *"

Following the statutory language, the charging part of the indictment states:

"MARVIN CHEEK is accused by the Grand Jury of the County of Klamath by this indictment of the crime of EMBEZZLEMENT BY EMPLOYEE, committed as follows:

"The said MARVIN CHEEK on or about the 13 day of January A.D. 1971 in the said County of Klamath and State of Oregon, then and there being, being an employee of Yainax Ranch, a corporation, there did come into his possession and be under his care by virtue of his employment as such employee a certain Speed Co Ditcher of the value of $450.00, said property being the property of the said Yainax Ranch, a corporation, the said MARVIN CHEEK then and there so having in his possession and under his care as such employee the said property of the said Yainax Ranch, a corporation, did unlawfully and feloniously embezzle and fraudulently

convert the same to his own use contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

In support of his first two assignments of error, i.e., that the case was improperly submitted to the jury, defendant contends the evidence does not establish three elements which are material under the statute and indictment. Specifically, defendant argues there was no proof that: (1) he did any act that constituted embezzlement of a ditcher; (2) the ditcher was in "his possession or * * * under his care by virtue of his employment"; and (3) the ditcher was converted "to his own use."

We review the entire record to determine whether the case was properly submitted to the jury.

Defendant was employed as the general manager of the Yainax Ranch, located near Klamath Falls. In November of 1970 he purchased, for use at the ranch, a ditcher from Albers Store for $450. The store billed this amount to the corporation which owned the ranch, and was paid by the corporation. Although title to the ditcher then passed to the corporation, the ditcher remained at Albers Store. The store manager testified he was awaiting delivery instructions or arrangements to be made to pick it up. Defendant testified that immediately after purchasing the ditcher from Albers he decided a different ditcher would be of more value in the ranch operations, and purchased another ditcher elsewhere with his own funds.

In December of 1970 defendant purchased on credit, in his own name, a snowmobile from Albers Store. After making a down payment defendant owed a balance of $684. Defendant testified he had asked

the corporation president, Mr. Huth, to authorize the purchase of the snowmobile for use on the ranch, but that Mr. Huth had refused. Mr. Huth testified that he could not remember any conversation with defendant concerning the purchase of a snowmobile.

Sometime between November 1970 and January 1971 defendant advised his employers that he believed the ditcher purchased from Albers to be inferior to another model, and requested authorization to exchange the two. Apparently nothing was said about defendant having already purchased another ditcher from his own funds.

At defendant's request, Mr. Huth then sent him a written authorization which stated:

"SUBJECT   Exchange of * * * Ditcher.
"Per your request to exchange the above ditcher for another ditcher of the same cost from alberts [sic] Feed. Please proceed if you are satisfied with the new model better.
"Signed/Dick Huth"

Defendant then prepared a different authorization, to which he forged Mr. Huth's signature. It stated:

"SUBJECT   Exchange of * * * Ditcher.
"Per your request to exchange the above ditcher. Please proceed if you are satisfied with the new transaction.
"Signed/Dick Huth"

On January 13, 1971, defendant presented the false authorization form at Albers Store and an employe at the store then prepared the following:

"CREDIT MEMO
"* * * Ditcher Returned Unused by Authority of

Yainex [sic] Corp. Credit to Apply to Marvin Cheek Contract on Snowmobile.

"Previous Balance 684.00
Credit As Above 450.00
New Balance 234.00"

It is this January 13 transaction which is the basis of the present embezzlement charge against defendant.

■ Was there sufficient evidence to go to the jury on the question of whether defendant embezzled a ditcher?

Defendant argues the evidence only establishes a "misapplication of credits" which the Oregon Supreme Court held in *State v. Tauscher*, 227 Or 1, 360 P2d 764, 88 ALR2d 674 (1961), is not embezzlement under former ORS 165.005. We do not believe the rule of *Tauscher* is applicable to these facts.

In *Tauscher* an employe was charged with embezzling a sum of money from her employer by writing a series of checks on her employer's bank account without authority and for her own purposes. Noting that property which is subject to embezzlement under former ORS 165.005 was defined in former ORS 164.310 (2), the court concluded the "credits," that is, the employer's intangible chose in action against his bank created by his deposits therein, were not property within the meaning of former ORS 164.310 (2).

Here, by contrast, the jury was entitled to conclude that defendant, in effect, sold his employer's ditcher. Although it is true the defendant did not receive cash in that transaction, but, instead, received a "credit," this word does not automatically invoke a *Tauscher* rule. That rule focuses on the nature of the *employer's* interest in the thing allegedly embezzled.

Thus, in the *Tauscher* case the defendant converted her employer's intangible chose in action. In this case there was evidence that defendant converted his employer's ditcher, which is a very tangible item of personal property.

■ As a related point, defendant contends that if he embezzled anything it was the proceeds from the sale of the ditcher and not the ditcher itself. Defendant relies upon the following:

> "Where an agent, authorized to sell the property of his principal, sells the property as the property of the principal and for the principal, and at the price and on the terms fixed by the principal, he is selling according to the authority vested in him; and, as stated in State v. Fox, 197 Iowa 1259, 198 N.W. 777, 779: 'It can scarcely be seriously contended that appellant could be guilty of embezzlement in selling the property when the contract expressly provided that that was the very thing he was to do. Whether or not he might be guilty of embezzlement of the proceeds of the sale of the property coming into his hands is not before us, because the indictment charges him with the embezzlement of the spreaders, and not with embezzlement of the proceeds of the sale of the spreaders. An embezzlement of the spreaders would be one thing and an embezzlement of the proceeds received from a sale of the spreaders would be another thing. In fact, they are two separate and distinct offenses." *State v. Bertrand*, 68 ND 134, 140-41, 278 NW 237 (1938).

This rule is not applicable. The jury could have concluded that defendant's act in selling or exchanging his employer's ditcher was beyond the authority vested in him by the genuine authorization form sent by Mr. Huth. Also, it seems clear that one cannot be charged with embezzling proceeds of a sale unless those pro-

ceeds became the property of the employer, and there was no evidence in this case that the proceeds from defendant's January 13 transaction at Albers Store ever became the property of his employer.

██ Was there sufficient evidence to go to the jury on the question of whether the ditcher was in defendant's possession or under his control by virtue of his employment?

The answer to this question depends upon whether the phrase, "has come into his possession or is under his care," in former ORS 165.005 means *actual* possession. It is true, as defendant argues, that the court in *State v. Tauscher*, supra, spoke of the possession contemplated by this statute as being actual possession. In context, however, this was part of a discussion of the question of whether a depositor's interest in a checking account is capable of being possessed in any way. We do not interpret *Tauscher* as holding that actual possession of an employer's property is an essential prerequisite before an employe can embezzle that property.

In *State v. Johnston*, 143 Or 395, 403, 22 P2d 879 (1933), an embezzlement case, the trial court gave the following instruction:

"'* * * It is not * * * necessary that the defendant should have been in the exclusive custody or possession at the time of the conversion to his own use, in order to constitute this offense. If the evidence establishes that the business and assets of the corporation were actually or practically entrusted to the care and management of the defendant, so that by virtue of his position as president, he had not merely access to, or a constructive holding of, but such actual custody of the funds and other assets of the corporation as enabled him to

have and exercise control over the same, that would place him in the lawful possession of the said funds or other property; and, if, while so lawfully in possession of such funds or other property, committed to his care and custody for the benefit of the corporation, he wrongfully converts any part or portion of said assets to his own use, he would thereby commit the offense of embezzlement * * *.' "

In another embezzlement case based on the same statute here involved, *State v. Bengtson*, 230 Or 19, 28, 367 P2d 363, 96 ALR2d 150 (1961), decided subsequently to *Tauscher*, the court stated:

"* * * Although a challenged instruction given by the trial court in *State v. Johnston* * * * did not receive direct approval of the court it certainly received tacit approval * * *. The instruction expresses the law in respect to this type of a case with unusual clarity * * *."

Under the standard stated in *State v. Johnston*, supra, and approved in *Bengtson*, we conclude the issue of possession was properly submitted to the jury. Although the ditcher remained physically at Albers Store, the store manager testified that he considered it the property of defendant's employer and held it awaiting delivery instructions from the defendant. There was evidence that the "care and management" of the ditcher had been "entrusted" to the defendant and he was able "to have and exercise control over" it.

■ Was there sufficient evidence to go to the jury on the question of whether the defendant converted the ditcher to his own use?

Defendant testified that he converted his employer's interest in the ditcher into his own interest in the snowmobile, but that the snowmobile was used exclusively for the benefit of his employer in the

operation of the ranch. From this, defendant argues the ditcher was converted to his employer's use, not his own.

Before the transaction of January 13, 1971, defendant owed Albers Store $684 for a snowmobile he had purchased there. After that transaction, defendant owed the store $234. Defendant's personal indebtedness on an item he was purchasing in his own name was thereby reduced by $450, the value of his employer's ditcher. It was proper for the jury to decide whether this was a conversion to defendant's own use.

■ The trial judge did not commit error in refusing to give defendant's requested instructions. The issues raised by those requested instructions have already been discussed above. They do not merit separate attention, which would only be repetitious.

Affirmed.